759 So.2d 620 (2000)
Curtis Leon HEGGS, Appellant,
v.
STATE of Florida, Appellee.
No. SC93851.
Supreme Court of Florida.
February 17, 2000.
Rehearings Denied May 4, 2000, and July 10, 2000.
*621 James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Appellant.
Robert A. Butterworth, Attorney General; James W. Rogers and Edward C. Hill, Jr., Assistant Attorneys General, Tallahassee, Florida; and Dale E. Tarpley, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.

REVISED OPINION
We have for review a circuit court judgment certified as having a great effect on the proper administration of justice throughout Florida and as requiring immediate resolution by this Court. See Heggs v. State, 718 So.2d 263 (Fla. 2d DCA 1998). Specifically, the Second District has requested that this Court determine whether chapter 95-184, Laws of Florida, is unconstitutional as violative of the single subject rule contained in article III, section 6 of the Florida Constitution. We have jurisdiction. See Art. V, § 3(b)(5), Fla. Const. As we explain more fully, based on our analysis in State v. Thompson, 750 So.2d 643 (Fla. 1999), we hold that chapter 95-184 violates the single subject rule and invalidate the law in its entirety.

I. FACTUAL BACKGROUND IN THE PRESENT CASE
In December 1995, the State of Florida (the State) filed an information against Curtis Leon Heggs (Heggs), charging him *622 with committing an armed robbery on November 2, 1995, in violation of section 812.13(2)(a), Florida Statutes (1995). Later that December, the State filed a second information, charging Heggs with committing an additional armed robbery with the offense occurring on October 24, 1995, in violation of the same statute. On September 4, 1996, a jury found Heggs guilty of the armed robbery offense charged in the second information, and later that same day, Heggs entered a written plea of guilty to the armed robbery charged in the first information.
Subsequently, on November 1, 1996, the trial court sentenced Heggs on each armed robbery offense to 132 months (11 years) in prison, with such sentences to run concurrently. The trial court calculated Heggs' sentences based on the 1995 sentencing guidelineswhich were the 1994 sentencing guidelines as amended by chapter 95-184, Laws of Floridabecause he committed his offenses on or after October 1, 1995. See Ch. 95-184, §§ 2-6, at 1678-98, Laws of Fla.; § 921.001(4)(b)2., Fla. Stat. (1995); see also Fla. R.Crim. P. 3.702; Fla. R.Crim. P. 3.991. Under the 1995 guidelines, the permitted sentencing range for Heggs' offenses was 83.2 to 138.7 months, while under the 1994 guidelines, the permitted sentencing range for these offenses would have been 55.8 to 93.5 months.[1] Further, because Heggs carried a firearm during the commission of the armed robberies, each of his sentences included a three-year minimum prison term in accordance with section 775.087(2), Florida Statutes (1995).[2] After imposition of these sentences, Heggs filed a consolidated appeal from both his trial and plea cases on November 18, 1996.
On appeal before the Second District, Heggs asserted in his initial brief that both of his sentences were either "illegal" or "unlawful" because chapter 95-184 violates the single subject rule contained in article III, section 6 of the Florida Constitution, which provides, in pertinent part, that "[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." Even though Heggs had not raised the single subject rule challenge in the trial court, he claimed in his brief that the challenge should be considered for the first time on appeal under the doctrine of fundamental error. The Second District agreed with Heggs and stated:
Heggs did not challenge the constitutionality of the sentencing guidelines in the circuit court. Even so, his increased sentence[s] under the 1995 guidelines implicate[] a fundamental due process liberty interest. See State v. Johnson, 616 So.2d 1, 3 (Fla.1993). Consequently, we may review this issue of fundamental *623 error on appeal. See Id. at 4; see also § 924.051(3), Fla. Stat. (Supp.1996).
Heggs, 718 So.2d at 264. On the merits, the Second District declined to rule on the single subject rule challenge, but instead certified the issue as having a great effect on the proper administration of justice throughout Florida, requiring immediate resolution by this Court. See id. Before making this certification, however, the Second District observed:
Heggs'[] challenge to chapter 95-184 presents an issue very similar to that raised in Thompson v. State, 708 So.2d 315 (Fla. 2d DCA 1998), review granted, 717 So.2d 538 (Fla.1998). In Thompson, we held that chapter 95-182, which addressed violent career criminal sentencing, was unconstitutional because the enactment embraced civil and criminal provisions that had no "natural or logical connection." That chapter's objectionable civil provisions addressing domestic violence injunctions also appear in chapter 95-184, at issue here. As we pointed out in Thompson, these three provisions began as bills in the Florida House of Representatives, failed to pass, and later were engrafted onto several Senate Bills: SB 168, which became chapter 95-182 (the subject of Thompson); SB 172, which became chapter 95-184 (the subject of this case); and SB 2216, which became chapter 95-195.
Following our own precedent in Thompson, we believe that chapter 95-184 violates the single subject rule because it, too, embraces civil and criminal provisions that are not logically connected. The two subjects "are designed to accomplish separate and dissociated objects of legislative effort." 708 So.2d at 317 (quoting State ex rel. Landis v. Thompson, 120 Fla. 860, 892-893, 163 So. 270, 283 (1935)). Likewise, as in Thompson, here there is no legislative statement of intent to implement comprehensive legislation to solve a crisis. See Thompson, 708 So.2d at 315.
Heggs, 718 So.2d at 264. Heggs is now before this Court for determination of the issue certified.

II. STANDING TO CHALLENGE CHAPTER 95-184 ON SINGLE SUBJECT RULE GROUNDS
In the decision below, the Second District determined that the window period for challenging chapter 95-184 on single subject rule grounds opened on October 1, 1995. See Heggs, 718 So.2d at 264 n. 1. We agree with this determination as applied to persons such as Heggs who claim that their guidelines sentences are invalid due to the changes in the guidelines within chapter 95-184.[3] Thus, the applicable window period in this case opened on October 1, 1995, and Heggs clearly committed his offenses after that date.
The Second District also determined that the window period for challenging chapter 95-184 on single subject rule grounds closed on May 24, 1997, the date on which chapter 97-97, Laws of Florida, reenacted the provisions contained in chapter 95-184 as part of the Legislature's biennial adoption of the Florida Statutes. See Heggs, 718 So.2d at 264 n. 1 (relying on State v. Johnson, 616 So.2d 1, 2 (Fla. 1993)). However, in Bortel v. State, 743 So.2d 595, 597 (Fla. 4th DCA 1999), the Fourth District certified conflict with the Second District's determination in Heggs *624 regarding the close of the window period. Specifically, the Bortel Court held that the defendant in that case, who committed his offenses between October 26, 1996, and November 24, 1996, did not have standing to challenge his guidelines sentences because "the sentencing guidelines at issue here were reenacted in 1996 pursuant to Chapter 96-388, Laws of Florida, with an effective date of October 1, 1996, thereby curing the constitutional defect raised in this case." Bortel, 743 So.2d at 596 (relying on Salters v. State, 731 So.2d 826 (Fla. 4th DCA 1999), and Scott v. State, 721 So.2d 1245 (Fla. 4th DCA 1998)). We note that whether the window period closed on October 1, 1996, or on May 24, 1997, in the present case Heggs would still have standing to raise his single subject rule challenge because he committed the offenses at issue on October 24 and November 2, 1995. In light of this fact, we decline to rule in this case as to when the window period closed for persons claiming that their guidelines sentences are invalid due to the amendments affected by chapter 95-184.

III. HEGGS' FAILURE TO RAISE HIS SINGLE SUBJECT RULE CHALLENGE IN THE TRIAL COURT
Even though Heggs did not assert a single subject rule challenge against chapter 95-184 in the trial court, the Second District determined that it could review such a challenge for the first time on appeal in this case because "his increased sentence[s] under the 1995 guidelines implicate[] a fundamental due process liberty interest." Heggs, 718 So.2d at 264. Upon review, it is clear that the sentences imposed on Heggs under the 1995 guidelines are longer (by over three years each) than they would have been had he been sentenced pursuant to the 1994 guidelines. Accordingly, we agree with the Second District that, under this Court's reasoning in Johnson, see 616 So.2d at 2, Heggs' single subject rule challenge against chapter 95-184 is reviewable for the first time on appeal.[4] Therefore, we now turn to the merits of Heggs' challenge.

IV. SINGLE SUBJECT RULE ANALYSIS
The single subject rule challenge against chapter 95-184 in this case is almost identical to the challenge presented in Thompson v. State, 708 So.2d 315, in which the defendant raised a single subject rule challenge to chapter 95-182, Laws of Florida. Specifically, as noted by the Second District below, see Heggs, 718 So.2d at 264, the same three provisions dealing with domestic violence are located in chapter 95-182, the chapter law considered in Thompson, and chapter 95-184, the chapter law at issue here. Compare Ch. 95-182, §§ 8-10, at 1673-75 (amending section 741.31, creating section 768.35, and amending section 784.046, respectively), with Ch. 95-184, §§ 36-38, at 1722-24 (same). Further, the domestic violence provisions contained in chapters 95-182 and 95-184 were added on the same day, May 4, 1995, on the floor of the House of Representatives. *625 See Fla. H.R. Jour. 1207-12 (Reg.Sess. 1995) (adding the domestic violence provisions, among other things, to Senate Bill 168); Fla. H.R. Jour. 1230-31 (Reg.Sess. 1995) (adding the domestic violence provisions, among other things, to Committee Substitute for Senate Bill 172). The Second District has expressed that the reasoning in Thompson should apply in the present case, and thus chapter 95-184, like chapter 95-182, should be found unconstitutional as violative of the single subject rule. See Heggs, 718 So.2d at 264. After considering the various provisions of chapter 95-184, the chapter law's legislative history, prior case law in the single subject rule context, as well as the similarities between this case and Thompson, we agree with the Second District and hold that chapter 95-184 violates the single subject rule.
Chapter 95-184 is characterized as "[a]n act relating to the justice system." Ch. 95-184, at 1676, Laws of Fla. The chapter law is comprised of 40 sections. See id. Section 1 provides that "[s]ections 2 through 36 of this act may be cited as the `Crime Control Act of 1995'"; section 39 is a severability clause; and section 40 provides that "[e]xcept as otherwise provided herein, this Act shall take effect upon becoming law." See id. at 1724. Therefore, there are 36 substantive sections contained in chapter 95-184. These substantive sections may be summarized as follows:

Sections 2-7. These sections amend various portions of chapter 921, Florida Statutes, relating to criminal sentencing guidelines. See Ch. 95-184, §§ 2-7, at 1678-99. These are the sections of chapter 95-184 that primarily affect Heggs.

Sections 8-13. These sections amend various substantive criminal statutes. See id. §§ 8-13, at 1699-1703. Specifically, section 8 amends the burglary statute (section 810.02) to create new penalty levels for the offense; section 9 amends the theft statute (section 812.014) to differentiate between levels of the offense; section 10 amends subsection (2) of 538.23 (dealing with secondary metals recyclers) to correspond with the changes to the theft statute; section 11 amends the retail and farm theft statute (section 812.015) to reflect the changes in the theft statute; section 12 amends the criminal justice information statutes (section 943.051) to reflect the changes in the theft statute; and section 13 amends the accessory after the fact statute (section 773.03) by establishing new penalty degrees of the offense.

Sections 14-25. These sections amend various statutes addressing substantive crimes and sentencing enhancement, in part to reflect changes in the sentencing guidelines established in sections 2 through 7. See Ch. 95-184, §§ 14-25, at 1703-16. In theory, section 19 impacts Heggs' three-year minimum sentence terms, see supra note 2, while section 25 amends another portion of chapter 921 relating to sentencing alternatives (section 921.187).

Sections 26-27. These sections amend the gain-time and control release statutes, respectively, in part to reflect changes in the sentencing guidelines. See Ch. 95-184, §§ 26-27, at 1716-18.

Sections 28-35. These sections amend various statutes relating to monetary compensation for crime victims. See Ch. 95-184, §§ 28-35, at 1718-22. For example, section 28 amends section 960.293, Florida Statutes, to reflect that a crime victim should be compensated in a civil suit for damages for actual losses suffered as a result of the crime. See id., Ch. 95-184, § 28, at 1718. The concept of a civil restitution lien is also present throughout the amendments adopted by sections 29 through 35. See id., §§ 29-35, at 1718-22.

Sections 36-38. These three sections amend various statutes relating to domestic violence, and they are the exact provisions that were included in chapter 95-182, the chapter law at issue in *626 Thompson. Compare Ch. 95-182, §§ 8-10, at 1673-75 (amending section 741.31, creating section 768.35, and amending section 784.046, respectively), with Ch. 95-184, §§ 36-38, at 1722-24 (same). Section 36 of chapter 95-184 amends section 741.31, Florida Statutes, to create a civil cause of action for damages (including costs and attorney's fees) for injuries inflicted in violation of a domestic violence injunction, to be enforced by the court that issued the injunction.[5] Section 37 creates section 768.35, Florida Statutes, to provide a cause of action for victims of continued domestic violence. Finally, section 38 amends several portions of section 784.046, Florida Statutes, by imposing certain procedural duties on clerks of court and law enforcement officers regarding the filing and enforcement of domestic violence injunctions.
In his briefs to this Court, Heggs argues that the sections of chapter 95-184 summarized above address four different subjects: criminal sentencing; defining substantive crimes; monetary compensation for crime victims; and civil remedies for victims of domestic violence. During oral argument, Heggs asserted that those sections address at least three different subjects: criminal sentencing, monetary compensation for crime victims, and civil remedies for victims of domestic violence. Conversely, the State claims the various sections comprising chapter 95-184 "are cogent and interrelated and directed to one primary object: the definition, punishment, and prevention of crime and the concomitant protection of the rights of crime victims." State's Answer Brief at 7-8. After reviewing the various sections contained in chapter 95-184, we conclude that our analysis in Thompson concerning chapter 95-182 must be applied herethe domestic violence provisions contained in chapters 95-182 and 95-184 are not naturally or logically connected to the remaining criminal subject matters contained in those chapter laws. We agree with the reasoning of the Second District that:
Following our own precedent in Thompson, we believe that chapter 95-184 violates the single subject rule because it, too, embraces civil and criminal provisions that are not logically connected. The two subjects "are designed to accomplish separate and dissociated objects of legislative effort." 708 So.2d at 317 (quoting State ex rel. Landis v. Thompson, 120 Fla. 860, 892-893, 163 So. 270, 283 (1935)). Likewise, as in Thompson, here there is no legislative statement of intent to implement comprehensive legislation to solve a crisis. See Thompson, 708 So.2d at 315.
Heggs, 718 So.2d at 264.
The State asserts that this case differs from Thompson because chapter 95-184, to a greater degree than chapter 95-182, is a comprehensive law similar to those upheld by this Court in Burch v. State, 558 So.2d 1, 2-3 (Fla.1990); Smith v. Department of Insurance, 507 So.2d 1080, 1085-87 (Fla.1987); Chenoweth v. Kemp, 396 *627 So.2d 1122, 1124 (Fla.1981); and State v. Lee, 356 So.2d 276, 282-83 (Fla.1978).[6] In doing so, the State attempts to distinguish chapter 95-184 from the chapter laws analyzed in State v. Johnson, 616 So.2d 1 (Fla.1993), and Bunnell v. State, 453 So.2d 808 (Fla.1984), in which this Court struck down the chapter laws at issue as being violative of the single subject rule. See Johnson, 616 So.2d at 4 (involving chapter 89-280, Laws of Florida, which addressed both habitual felony offender sentencing and the licensing of private investigators and their authority to repossess personal property); Bunnell, 453 So.2d at 809 (involving chapter 82-150, Laws of Florida, which created the crime of obstruction of justice and made amendments regarding the Florida Council on Criminal Justice). We disagree with the State's position that the decisions of this Court in Burch, Smith, Chenoweth, and Lee are controlling here. In each of those cases, the Legislature specifically identified a broad crisis that it was attempting to address through the passage of the comprehensive chapter laws at issue. See Burch, 558 So.2d at 2-3 (involving challenge to chapter 87-243, Laws of Florida, in which the Legislature identified crisis in increasing crime rate); Smith, 507 So.2d at 1085-87 (involving challenge to chapter 86-160, Laws of Florida, in which the Legislature identified crisis in the availability of commercial liability insurance); Chenoweth, 396 So.2d at 1124 (involving challenge to chapter 76-260, Laws of Florida, in which the Legislature identified crisis in the tort law/medical malpractice liability insurance system); Lee, 356 So.2d at 282-83 (involving challenge to chapter 77-468, Laws of Florida, in which the Legislature identified crisis in tort law/automobile insurance system). In relation to chapter 95-184, however, the Legislature has not identified a crisis that would require combining the criminal provisions with the three sections dealing with civil remedies for victims of domestic violence. Instead, based on the text and legislative history of chapter 95-184, it seems clear that the chapter law constitutes a classic act of logrolling, which is the evil sought to be prevented by the single subject rule and an intellectually honest analysis requires application of Thompson. Accordingly, we hold that chapter 95-184, Laws of Florida, violates article III, section 6 of the Florida Constitution.
We realize that our decision here will require, among other things, the resentencing of a number of persons who were sentenced under the 1995 guidelines, as amended by chapter 95-184. However, only those persons adversely affected by the amendments made by chapter 95-184 may rely on our decision here to obtain relief. Stated another way, in the sentencing guidelines context, we determine that if a person's sentence imposed under the 1995 guidelines could have been imposed under the 1994 guidelines (without a departure), then that person shall not be entitled to relief under our decision here. See, e.g., Freeman v. State, 616 So.2d 155, 156 (Fla. 1st DCA 1993) (affirming denial of the defendant's motion to correct sentence, even in light of this Court's decision in State v. Johnson, 616 So.2d 1 (Fla.1993), because the defendant failed to allege that "he could not have been habitualized without the amendments effected by chapter 89-280"); cf. State v. Mackey, 719 So.2d 284, 284-85 (Fla.1998), (affirming fifteen-year sentence that departed from 1991 *628 guidelineseven though the trial court should have calculated the sentence using the 1994 guidelinesbecause the fifteen-year sentence would have been within the 1994 guidelines range).

V. SEVERABILITY
The final issue to be addressed in this case is whether the sections contained in chapter 95-184 that address civil remedies for victims of domestic violence may be severed from the chapter law so that the remaining sections may remain valid. The State argues that this Court's decision in Moreau v. Lewis, 648 So.2d 124, 128 (Fla. 1995), along with the severability clause set forth in section 39 of chapter 95-184, supports the application of severability in this case. Contrastingly, Heggs argues that severability is never appropriate in the single subject rule context and that chapter 95-184 should be declared unconstitutional in its entirety. After careful consideration, we find that severability is not appropriate in this case.
In Colonial Investment Co. v. Nolan, 100 Fla. 1349, 131 So. 178 (1930), this Court considered whether chapter 14571 of the Laws of Florida of 1929, violated the single subject rule contained in article 3, section 16 of the Florida Constitution of 1885, the predecessor of the same substantive rule now contained in article III, section 6 of the Florida Constitution. The party challenging the chapter law in that case primarily alleged that the title of the law was invalid because it contained more than one subject. See Nolan, 100 Fla. at 1350-51, 131 So. at 178-79. This Court declined to determine the case on that isolated basis, however, because it found that both the title and body of the chapter law contained two distinct and improperly connected subjects. See id. at 1353, 131 So. at 180. This Court recognized that if the title of a chapter law contains more than one subject but the body does not, then such a law may remain valid. See id. However, as to chapter laws in which both the title and body contain more than one subject, this Court quoted with approval a legal text which stated: "If an act embraces two or more subjects, and two or more of the same are expressed in the title, the whole act is void." Id. at 1354, 131 So. at 180 (quoting 1 John Lewis, Statutes and Statutory Construction § 144 (2d ed.1904)). After finding that both the title and body of chapter 14571 contained more than one subject, this Court invalidated the law in its entirety. See Nolan, 100 Fla. at 1358, 131 So. at 181. This Court has reached a similar conclusion in several other decisions. See Sawyer v. State, 100 Fla. 1603, 1611, 132 So. 188, 192 (1931) (relying on Nolan to invalidate entire chapter law because the law's title and body contained more than one subject); Ex parte Winn, 100 Fla. 1050, 1053, 130 So. 621, 621 (1930) (stating that "both the act and the title dealt with more than one subject, and that the several subjects dealt with were not so properly connected as to conform with [the single subject rule], and for this reason the entire act must fall").
Since issuing these vintage opinions, this Court has not discussed the concept of severability as it relates to whether a chapter law violated article III, section 6 of the Florida Constitution, other than in Moreau. In that case, the petitioner challenged the constitutionality of Specific Appropriation 63 of the 1994-95 General Appropriations Act (the Act), as well as section 2, subsection 18 of the Act's Implementing Bill. See 648 So.2d at 125-26. The petitioner claimed that both the Act and the Implementing Bill violated article III, sections 6 and 12 of the Florida Constitution because they improperly changed or amended substantive law on subjects other than appropriations.[7]See id. at 126-27. This Court found that while the Act itself did not amend substantive law, *629 the Implementing Bill did amend existing law on subjects other than appropriations and therefore violated article III, section 6 of the Florida Constitution. See id. at 127. This Court then found that the offending section of the Implementing Bill was properly severable from the remaining portions of the bill, see id. at 127-28, noting the severability clause contained in the Implementing Bill and applying the following test set forth by this Court in Presbyterian Homes v. Wood, 297 So.2d 556, 559 (Fla.1974):
An unconstitutional portion of a general law may be deleted and the remainder allowed to stand if the unconstitutional provision can be logically separated from the remaining valid provisions, that is, if the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; and the good and bad features are not inseparable and the Legislature would have passed one without the other; and an act complete in itself remains after the invalid provisions are stricken.
Moreau, 648 So.2d at 128.
After reviewing Moreau, we find that the severability analysis set forth therein must be limited to the appropriations context. Our reasoning is four-fold. First, pursuant to article III, section 12 of the Florida Constitution, laws on appropriations must address only that subject and not amend substantive law. Second, as is clear from Moreau, when the Legislature enacts a law to implement a general appropriations act, such implementing bill must relate only to appropriations as well. Third, any expansive application of severability would emasculate the "one subject" constitutional provision and thrust the judiciary into the legislative arena. Finally, the Implementing Bill at issue in Moreau provided that it was "`[a]n act relating to implementing the fiscal year 1994-95 General Appropriations Act.'" Moreau, 648 So.2d at 128. Thus, in that case, the title of the Implementing Bill contained only one subject, while the body contained two. Under such circumstances involving appropriations, it is proper to sever the superfluous subject contained in the body of the chapter law if such severance does not violate the rules governing severance set forth in Presbyterian Homes v. Wood, 297 So.2d 556 (Fla.1974). Cf. State v. Physical Therapy Rehab. Center of Coral Springs, Inc., 665 So.2d 1127, 1131-32 (Fla. 1st DCA 1996) (finding title of chapter law unconstitutionally defective for failing to give adequate notice of contents, and severing section in body of the chapter law that was not adequately noticed in the title); Millard H. Ruud, "No Law Shall Embrace More Than One Subject", 42 Minn. L.Rev. 389, 397 (1958) ("[I]f the title [of a bill] gives adequate notice of a portion of the contents of the bill, then only that portion of the act of which the title fails to give adequate notice is invalid.").
In summary, we find that the doctrine of severability is applicable in the single subject rule context only in certain situations. First, as set forth in Moreau, a court may sever portions of a law implementing a general appropriations law if severing such portion or portions of the implementing bill would not run afoul of the principles set forth in Wood. Second, a court may sever a portion or portions of the body of a chapter law that are properly a single subject but have not been adequately noticed in the title, if severing such portion or portions would not run afoul of the principles set forth in Wood. See Physical Therapy Rehab., 665 So.2d at 1132. Finally, in accordance with the rule set forth by this Court in Nolan, a chapter law that violates the single subject rule contained in article III, section 6 of the Florida Constitution must be voided in its entirety should the body of such law contain more than one subject. See also Litchfield Elementary School Dist. No. 79 v. Babbitt, 125 Ariz. 215, 608 P.2d 792, 803-04 (App. 1980) (adopting rule that entire act must fail where it violates single subject rule). In reaffirming the rule set forth in Nolan, *630 we note the cogent analysis of this issue set forth years ago by Millard H. Ruud:
It is very doubtful that the doctrine of severability is applicable to an act containing two or more subjects adequately expressed by its title. Where a portion of an act is unconstitutional, the doctrine of severability saves the constitutional portions and gives them effect, where to do so will carry out the legislative purpose. Unconstitutionality, generally flows from lack of legislative power. The one subject rule is not concerned with substantive legislative power. It is aimed at log-rolling. It is assumed, without inquiring into the particular facts, that the unrelated subjects were combined in one bill in order to convert several minorities into a majority. The one-subject rule declares that this perversion of majority rule will not be tolerated. The entire act is suspect and so it must all fall. If this is the rationale for the constitutional rule and it certainly is the principal one stated by the courts, then it is manifestly unsound to employ severability to save the provisions dealing with one of the subjects. The necessary assumption that this will carry out the legislative purpose, assented to by a majority of the legislators, cannot be made.
Ruud, 42 Minn. L.Rev. at 399.[8] If we were to adopt the severability approach, this Court would be thrusting itself into the legislative arena, a venture we care not to undertake in connection with this single subject analysis. We now apply these above-stated principles to the present case.
The title of chapter 95-184, in its entirety, spans almost two pages of text. See Ch. 95-184, at 1676-78. Clearly located within the lengthy title is a reference to amending sections 741.31, 768.35, and 784.06, Florida Statutes,[9]see id. at 1677-78, which are the domestic violence provisions addressed in sections 36 through 38 of the chapter law. See id. §§ 36-38, at 1722-24. Therefore, as it is clear that both the title and the body of chapter 95-184 contain more than one subject, the domestic violence provisions may not be severed from the Act to save its remaining sections. Accordingly, we hold chapter 95-184, Laws of Florida, void in its entirety, reverse the sentences imposed in this case, and remand this cause for resentencing in accordance with the valid laws in effect on October 24 and November 2, *631 1995, the dates on which Heggs committed his respective offenses.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
For the reasons stated in my dissent in State v. Thompson, 750 So.2d 643 (Fla. 1999), I dissent from the majority decision in this case. Rather, I would approve the decision of the three district courts who have decided on this issue contrary to the majority and the Second District.
NOTES
[1] This 1994 guidelines calculation is taken directly from the opinion below, in which the Second District stated, "It is not disputed that Heggs's sentencing range under the 1994 guidelines would be 55.8 months to 93.5 months." Heggs, 718 So.2d at 264. Indeed, this statement is consistent with the calculation contained in Heggs' initial brief to the Second District. Heggs' initial brief to this Court, however, asserts that the "guidelines range under the 1994 guidelines would be 44.8 to 93.5 months." Initial Brief at 4. Accepting either calculation as true, the maximum sentence under the 1994 guidelines would have been 93.5 months, which clearly is less than the 132-month sentences Heggs received.
[2] Although the trial court did not specify the year of the statute under which it imposed the three-year minimum mandatory prison terms, it is clear that the 1995 version of the statute, as amended by chapter 95-184, Laws of Florida, would apply to Heggs because he committed his offenses on or after October 1, 1995. See Ch. 95-184, § 19, at 1708-10, Laws of Fla. (amending section 775.087, applicable to offenses committed on or after October 1, 1995). Thus, theoretically, Heggs' three-year minimum mandatory prison terms would be impacted by this Court's ruling as to the constitutionality of chapter 95-184. Practically, however, this Court's ruling on chapter 95-184 will not entitle Heggs to relief from his minimum mandatory prison terms because he would have received such terms under the 1993 version of section 775.087(2). See § 775.087(2), Fla. Stat. (1993).
[3] We must clarify the Second District's determination, however, as applied to persons affected by other changes made by chapter 95-184. Specifically, while some sections of chapter 95-184 became effective on October 1, 1995, e.g., chapter 95-184, section 6, at 1693, Laws of Florida, other sections became effective on June 8, 1995, when the Governor approved the law. See Ch. 95-184, § 40, at 1724 ("Except as otherwise provided herein, this act shall take effect upon becoming a law."); Parker v. Evening News Pub. Co., 54 Fla. 482, 483-84, 44 So. 718, 718 (1907); Op. Att'y Gen. Fla. 91-63 (1991). Thus, depending on which section of chapter 95-184 impacts the person challenging that chapter law on single subject rule grounds, the applicable window period could open on June 8, 1995, or on October 1, 1995.
[4] We requested supplemental briefing from the parties regarding whether sections 924.051(3) and 921.051(4), Florida Statutes (Supp.1996), which are portions of the Criminal Appeal Reform Act (the Act), and this Court's rules implementing the Act (Implementing Rules), apply in this case, and if so, what effect the Act and Implementing Rules would have. At oral argument, the Assistant Attorney General representing the State conceded that even if the Act and Implementing Rules apply to this case, Heggs would still be able to assert his single subject rule challenge against chapter 95-184 for the first time on appeal. Based on the facts of this case, we agree with the State's concession and thus do not determine whether the Act and Implementing Rules apply to persons who committed their offenses before those laws became effective. Cf. Nelson v. State, 748 So.2d 237 (Fla. 1999) (declining to determine whether a portion of the Act applied where offense was committed before the Act became effective but trial occurred after, finding that even if the Act applied, the result would be the same), cert. denied, ___ U.S. ___, 120 S.Ct. 950, 145 L.Ed.2d 825 (2000) (No. 99-7076).
[5] Interestingly, section 36 is the only section in chapter 95-184 dealing with domestic violence that is included as part of the "Crime Control Act of 1995." See Ch. 95-184, § 1, at 1678. This anomaly appears to be the result of an oversight. Specifically, on May 4, 1995, the House of Representatives considered Committee Substitute for Senate Bill 172, the bill version of chapter 95-184. See Fla. H.R. Jour. 1214-1232 (Reg.Sess.1995). At that time, the House substantially overhauled the version of Committee Substitute for Senate Bill 172 that had been referred from the Senate. See id. The result of this overhaul was a 41 section bill, with current section 36 then found at section 37. See id. After this 41-section bill was presented, however, Representative Martinez proposed an additional amendment to eliminate section 28 from the 41-section bill. See id. at 1232. The House approved the amendment proposed by Representative Martinez, and the text and title of the bill were corrected to reflect the elimination of section 28. See id. However, section 1 of the bill declaring that "sections 2 through 36 of this act may be cited as the `Crime Control Act of 1995'" was not edited to reflect the change. See id. As a result, according to the text of chapter 95-184, section 36 is part of the "Crime Control Act of 1995."
[6] Heggs notes that these decisions were subject to vigorous dissent on the single subject rule issue. See Burch, 558 So.2d at 4 (Shaw, J., dissenting, joined by Barkett and Kogan, JJ.); Smith, 507 So.2d at 1096 (Erhlich, J., concurring in part and dissenting in part, joined by Barkett and Adkins, JJ.); Chenoweth, 396 So.2d at 1126 (Sundberg, C.J., joined by England, J.); Lee, 356 So.2d at 286 (Sundberg, J., concurring in part and dissenting in part, joined by England and Hatchett, JJ.). Further, Heggs notes that Justice Adkins, who joined in the four person majority in Lee, subsequently stated that his concurrence in Lee was a "mistake." See Smith, 507 So.2d at 1099 (Adkins, J., concurring in part and dissenting in part).
[7] Article III, section 12 of the Florida Constitution provides: "Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject."
[8] We recognize that courts in other jurisdictions have severed portions of single subject rule violative chapter laws in a variety of circumstances. See, e.g., Western Int'l v. Kirkpatrick, 396 N.W.2d 359, 364-65 (Iowa 1986); State v. Prince Georgians for Glendening, 329 Md. 68, 617 A.2d 586, 589-90 (1993); Hammerschmidt v. Boone County, 877 S.W.2d 98, 103 (Mo.1994) ("[W]hen the Court concludes that a bill contains more than one subject, the entire bill is unconstitutional unless the Court is convinced beyond a reasonable doubt that one of the bill's multiple subjects is its original, controlling purpose and the other subject is not."); State ex rel. Hinkle v. Franklin County Board of Elections, 62 Ohio St.3d 145, 580 N.E.2d 767, 770 (1991). However, we find persuasive Justice Douglas's observation in Hinkle: "[H]ow does the majority know which part of the Act is defective? The Act is a promulgation of the General Assembly in package form. Can we break into the package and excise what we perceive (or want to be) the offending part?" 580 N.E.2d at 773 (Douglas, J., dissenting); see also State ex rel. Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 715 N.E.2d 1062, 1101-02 (1999) (acknowledging that there likely is adequate support to overrule Hinkle on the issue of severability).
[9] Curiously, the title of chapter 95-184 also provides the following:

[A]mending s. 741.29, F.S.; providing legislative intent with respect to services for victims of domestic violence; amending s. 741.30, F.S.; requiring the clerk of court to furnish the sheriff with specified information on respondents; revising guidelines for transmission of specified information by the sheriff; restricting the authority to serve or executive [sic] injunctions for protection against domestic violence to specified municipal or county law enforcement officers....
Ch. 95-184, at 1677-78. However, nowhere in chapter 95-184 did the Legislature amend either section 741.29 or section 741.30, Florida Statutes. Heggs has not challenged this surplusage.