814 So.2d 1187 (2002)
Craig Bernard WASHINGTON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-9.
District Court of Appeal of Florida, Fifth District.
April 19, 2002.
*1188 James B. Gibson, Public Defender, and Scott Ragan, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.

ON MOTION FOR REHEARING
SHARP, W., J.
We grant the state's motion for rehearing, withdraw our previous opinion dated November 30, 2001, and substitute the following opinion, which certifies to the Florida Supreme Court a question of great public importance.
As set forth in our withdrawn opinion, this was an Anders appeal.[1] Pursuant to the constitutional mandate of Anders and the directives of the Florida Supreme Court in State v. Causey, 503 So.2d 321 (Fla.1987), we undertook an independent review of the record. We discovered a serious sentencing error,[2] and requested supplemental briefing from the public defender and the attorney general.
Both the public defender and the attorney general agreed Washington had received an illegal sentence. He had been convicted of trafficking in cocaine and the amount of contraband was more than 200 grams and less than 400 grams. The court sentenced him to a term of life imprisonment as an habitual offender and imposed a $100,000 fine. This sentence is legal under the present version of the drug trafficking statute, except that the court would be required to sentence the defendant to a "mandatory minimum term of imprisonment of 7 years." § 893.135(1)(b)1.B, Fla. Stat. (2000). However, this statute did not become effective until October 1, 2000, and Washington committed his offense on March 24, 1999.
The applicable version of the drug trafficking statute in this case was section 893.135(1)(b)1.B, Fla. Stat. (1997).[3] That statute required the defendant to be sentenced pursuant to the sentencing guidelines and pay a fine of $100,000. Washington should not have been sentenced to a life term as an habitual offender.[4] His maximum guideline sentence was thirty years, and the life sentence he received exceeded the statutory maximum provided by law. In this case, Washington's life sentence is an illegal sentence and constitutes *1189 fundamental error. See State v. Mancino, 714 So.2d 429 (Fla.1998).
The sticky issue in this case is what the appellate court should do about fundamental sentencing errors, such as the one in this case, in the context of Anders and Causey. The state argues the appellate court's hands are tied to correct the fundamental error on direct appeal because Washington failed to preserve the sentencing issue. See Maddox v. State, 760 So.2d 89 (Fla.2000); Geri v. State, 797 So.2d 605, 606 (Fla. 1st DCA 2001). He did not object at sentencing or file a motion to correct his sentence pursuant to Florida Rule of Criminal Procedure 3.800(b), and this case is past the "window period" carved out in Maddox.
Pursuant to Maddox and the new rules adopted by the Florida Supreme Court to implement the Criminal Appeal Reform Act of 1996,[5] it appears we must affirm Washington's convictions and sentence, without prejudice for him to seek appropriate post-conviction relief. Stinson v. State, 785 So.2d 759 (Fla. 1st DCA 2001); Durr v. State, 773 So.2d 644 (Fla. 5th DCA 2000).
We reach this conclusion, however, with misgivings and concerns for how we as an appellate court can faithfully carry out our constitutional duties pursuant to Anders and Causey.[6] If we see a fundamental sentencing error in an Anders appeal, which has not been preserved, should we continue to order briefs from the public defender and attorney general, but deny relief, even though that contradicts longestablished appellate practice? Bedford v. State, 633 So.2d 13 (Fla.1994); Sanders v. State, 698 So.2d 377, 378 (Fla. 1st DCA 1997). Must we, in every such case, write a short affirmance pointing out the possible modes of collateral relief the defendant could possibly pursue? Would that be sufficient under the Anders and Causey mandates, since defendants are not entitled to counsel in collateral proceedings,[7] and may not understand or know how to seek collateral relief? As a practical matter, is this procedure truly economic of judicial time and energy, since it will require duplicate consideration by another set of courts to resolve a matter we could address instanter? Does the Criminal Appeal Reform Act truly mandate this result? Section 924.051(3) provides:
An appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error. A judgment or sentence may be reversed on appeal only when an appellate court determines after a review *1190 of the complete record that prejudicial error occurred and was properly preserved in the trial court, or if not properly preserved, would constitute fundamental error. (emphasis supplied).
Accordingly, we certify to the Florida Supreme Court the following question of great public importance:
NOTWITHSTANDING MADDOX AND THE CLOSURE OF THE WIDOW PERIOD, SHOULD AN APPELLATE COURT CORRECT AN ILLEGAL SENTENCE IN AN ANDERS CASE WHICH WAS NOT PRESERVED PURSUANT TO FLORIDA RULE OF CRIMINAL PROCEDURE 3.800(B) AND FLORIDA RULE OF APPELLATE PROCEDURE 9.140(D), AND WHICH WAS DISCOVERED BY THE COURT'S INDEPENDENT REVIEW? IF NOT, WHAT STEPS SHOULD AN APPELLATE COURT FOLLOW TO CARRY OUT THE MANDATES OF ANDERS AND CAUSEY IN SUCH A CASE?
Accordingly, we grant the state's motion for rehearing, substitute this opinion for our prior opinion, certify the above question to the Florida Supreme Court and affirm this cause without prejudice to seek collateral relief below.
Motion for Rehearing GRANTED; QUESTION CERTIFIED; AFFIRMED.
COBB and ORFINGER, R.B., JJ., concur.
NOTES
[1] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[2] See Bryant v. State, 760 So.2d 1034 (Fla. 5th DCA 2000).
[3] See Heggs v. State, 759 So.2d 620 (Fla. 2000); Bryant.
[4] Id.
[5] Amendments to the Florida Rules of Appellate Procedure, 696 So.2d 1103 (Fla.1996) (Amendments I); Amendments to the Florida Rules of Appellate Procedure and Criminal Procedure, 761 So.2d 1015 (Fla.1999) (Amendments II).
[6] Under Anders and Causey, a Florida appellate court has an obligation to conduct an independent review of the record to discover any error. In Anders, the United States Supreme Court explained that appellate counsel was to bring possible error to the attention of the Court to induce the court to pursue all the more vigorously its own review. Anders, 87 S.Ct. at 1400. And in Causey, the Florida Supreme Court explained that in light of this language from Anders, "In order to assure indigents fair and meaningful appellate review, the appellate court must examine the record to the extent necessary to discover any errors apparent on the face of the record." Causey, 503 So.2d at 322. Causey then goes on to read Anders as allowing "both the appellant and the state to submit briefs on the issues that the court has found in its independent review to be arguable on the merits." Id. at 323.
[7] Waterhouse v. State, 792 So.2d 1176, 1193 (Fla.2001).