860 So.2d 478 (2003)
Uzi Gary STAV, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-4370.
District Court of Appeal of Florida, Fourth District.
November 12, 2003.
Rehearing Denied December 31, 2003.
*479 Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Uzi Gary Stav was convicted of organized scheme to defraud and grand theft greater than $20,000 and less than $100,000. He was sentenced to concurrent 42.5 month sentences on both convictions. Stav now appeals these convictions and sentences on three grounds.
First, Stav asserts that the trial court erred by improperly admitting Williams Rule evidence. See Williams v. State, 110 So.2d 654 (Fla.1959). Second, Stav contends that the constitutional protection against double jeopardy was violated by convicting and sentencing him for the two crimes in question. Third, Stav posits that the trial court erred by imposing an upward departure sentence based on the 1995 rather than 1994 sentencing guidelines where Heggs v. State, 759 So.2d 620 (Fla.2000), was applicable. We find error only as to the double jeopardy issue on appeal, as the two crimes share common elements and the State concedes the violation. As a result, the grand theft conviction and sentence is reversed and remanded for discharge.
In January 1996, Stav began working for Lifestyle Vacation Incentives ("LVI"), and was charged with developing and administering an international air travel division in addition to having some operational responsibility for the domestic air travel division. Stav had extensive experience in the travel industry, and was paid a base salary plus commissions.
In November 1997, LVI became aware that Stav had booked some Austrian vacation packages without the authority to do so and terminated Stav. Following his termination, several LVI employees audited Stav's records, resulting in this criminal case against him. Subsequent to his termination by LVI, Stav was employed by Take Me Along Travel. There, without permission, he misused two Delta AD-75 discount coupons, which entitle travel industry members to a 75% discount on travel. By not heeding restrictions associated with these coupons when booking a trip for his wife and himself, Stav caused the travel agency to be responsible for additional costs. Stav also failed to pay the full value of these tickets. It is the introduction of this AD-75 evidence which generated the Williams Rule issue on appeal.
The criminal charges against Stav in this case are based on four incidents. First, Stav owned a number of United Airlines "denied boarding compensation coupons," referred to as "magic coupons" throughout the case below. These magic coupons are essentially ticket vouchers that can be exchanged for an airline ticket up to a specified value. He agreed to sell these magic coupons to LVI for use in domestic travel incentive programs. Several times Stav charged LVI for magic coupons to be submitted with tickets to the Airline Reporting Corporation ("ARC"), a travel industry clearinghouse. However, when Stav submitted *480 tickets to ARC, he failed to attach the magic coupons. As a result, LVI was charged by ARC for the full fare of the tickets, in addition to having paid Stav for the unattached vouchers.
Second, Stav acquired airline tickets for family and friends to join him both for business trips as well as vacations and LVI was charged by ARC for much of this travel. Stav argues that he was authorized to take another individual on all business trips at company expense, and that he paid for all family travel. LVI refutes this.
Third, Stav falsified his commission reports by stating that he was due commissions for tickets that were exchanged or voided, purchased with discounts or incentives, or purchased in-house. Commissions are not payable for these types of tickets, and LVI contends that Stav knew he was not entitled to these commissions.
Fourth, Stav posted frequent charge-backs to his son Eli's credit cards. Stav claimed to have refunded customers in cash when their cash payments were not recorded by LVI, and then charged-back the amount of the refund from LVI to Eli's credit cards. LVI states that the nature of its business is such that there were very few cash payments and contends that the number of charge-backs exceeded the number of cash ticket purchases occurring at LVI.
We conclude that the AD-75 coupon evidence is admissible in this case on the ground of plan under the Williams Rule statute, rather than the ground asserted by the State at trial. On the Williams Rule issue, the standard of review applicable to the consideration of whether evidence was properly admitted is abuse of discretion. Geldreich v. State, 763 So.2d 1114, 1116 (Fla. 4th DCA 1999). The Williams Rule has been codified by the legislature in Florida Statutes section 90.404(2)(a):
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is solely to prove bad character or propensity.
As to the question of similarity, it is true that the magic coupons and AD-75 coupons were issued by different airlines and function a little differently. However, they both alter the cost of a ticket, both operate under restrictions for use, and both cause travel agencies to be charged by ARC in the amount of any unaccounted airfare. In the present case, where the identity of Stav as the perpetrator is not at issue, we conclude that the similarity of magic coupons and AD-75 coupons is sufficient for the purpose of Williams Rule admissibility. See Houston v. State, 852 So.2d 425, 427 (Fla. 5th DCA 2003) ("Similar fact evidence relevant to prove a material fact other than identity need not meet the rigid similarity requirement applied when such evidence is used to prove identity.").
We affirm the admission of the AD-75 coupons in this case based on the so-called "tipsy coachman" doctrine. Robertson v. State, 829 So.2d 901, 906 (Fla.2002). The doctrine has been analyzed by the supreme court in a Williams Rule case, and is described as allowing an appellate court to affirm the admission of such evidence where the trial court "reaches the right result, but for the wrong reason" and "there is any basis which would support the judgment in the record." Id. Although the supreme court rejected the application of the "tipsy coachman" doctrine in Robertson, that case is distinguishable from *481 the case at bar for two reasons. See id. at 906-911.
First, in Robertson the trial court never considered the challenged evidence under the Williams Rule, because the State did not seek such review through a notice of intent. Id. at 905-906, 908. Instead, the Third District employed the Williams Rule for the first time on appeal as an alternate ground for affirming Robertson's conviction. Id. at 905. As a result, the trial court had not determined whether the evidence was similar, too remote, or too prejudicial. Id. at 907-908. This inquiry by the trial court is important because Williams Rule admissibility is a "highly individualized, factually intensive inquiry." Id. at 908. In contrast, in Stav's case, the Williams Rule was addressed by the trial court because the State filed a notice of intent. The trial court admitted the evidence after considering similarity and relevance to prove a material fact, but did so on a ground other than plan as provided for by statute.
Second, the court in Robertson concluded that the "tipsy coachman" doctrine did not apply largely because there was no record evidence of similarity between the incident admitted into evidence and the crime charged. Id. at 907, 909-911. This is not the case with Stav, because record evidence establishes the similarity between his actions at LVI and Take Me Along and those incidents both establish an ongoing plan to defraud employers.
Applying the "tipsy coachman" doctrine in the case at bar, one basis stated in the statute for the admission of Williams Rule evidence is to show a plan. Stav was convicted of organized scheme to defraud. Plan and scheme are synonyms. See The Merriam-Webster Thesaurus 422, 488 (1989 ed.). The AD-75 evidence, coupled with the magic coupon misuse, demonstrates that Stav, having experience in the travel industry, engaged in a plan to defraud employers through various methods. This method of misusing magic coupons and AD-75 coupons to affect the cost of airfare caused the travel agencies to pay for the misuse and suffer a monetary loss to the ultimate benefit of Stav. We conclude that the AD-75 coupons helped establish the presence of Stav's ongoing plan to defraud employers, rather than demonstrate bad character or propensity on Stav's part. As a result, the trial court did not err by admitting the AD-75 coupons as Williams Rule evidence.
Lastly, we address the sentencing issue. Stav was sentenced based on a 1995 guidelines scoresheet, and the 1995 sentencing guidelines were ruled unconstitutional by Heggs, 759 So.2d at 621. Due to this development, sentencing for offenses occurring between October 1, 1995 and May 24, 1997, the Heggs window, should be based on the 1994 sentencing guidelines. Trapp v. State, 760 So.2d 924, 928 (Fla.2000). When determining whether an offense was committed during the Heggs window, an ongoing felony criminal enterprise, as alleged in Stav's case, should be "sentenced under the guidelines on the beginning date of the criminal activity." Fla. R.Crim. P. 3.703(d)(5). Stav's organized scheme to defraud began in November 1996, within the Heggs window, and at first glance it appears that he was entitled to be sentenced under the 1994 guidelines.
However, Stav's sentence includes an upward departure from the 1995 guidelines range for economic motives. Stav contends that because this departure sentence was based on the 1995 guidelines and not the 1994 guidelines, his sentence should be reversed and remanded for appropriate calculation under Hope v. State, 797 So.2d 1252, 1253 (Fla.2001). The State challenges this proposition based on State v. Lemon, 825 So.2d 927 (Fla.2002), which *482 while differentiating Hope, concluded that a departure sentence did not need to be reconsidered where "the departure sentence was based on departure reasons that would be valid under both the 1994 and 1995 guidelines." Id. at 929. In Stav's case, the economic motive reason cited by the trial court in applying an upward departure was valid and applicable under both the 1994 and 1995 sentencing guidelines. As a result, Stav's sentence is not in error and he is not entitled to Heggs relief.
In sum, we conclude that the organized scheme to defraud conviction was not tainted by Williams Rule evidence, and this conviction is affirmed. Stav's 42.5 month sentence based on a valid departure ground is affirmed. The grand theft conviction and sentence are barred by double jeopardy and reversed.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED for discharge of the grand theft greater than $20,000 and less than $100,000 conviction and sentence.
GUNTHER and TAYLOR, JJ., concur.
FARMER, C.J., dissents with opinion.
FARMER, C.J., dissenting.
I dissent from the affirmance of the admission of the similar fact evidence. In my opinion this evidence should have been excluded. I would reverse for a new trial.
Essentially the trial court admitted evidence of later acts of a defendant to prove that on a prior occasion he had committed the criminal acts with which he was charged and standing trial. The later evidence deals with his arguable misuse of discount coupons, given to agents in the travel industry, by allowing his wife to travel with him. This evidence was adduced to prove that there was no mistake on his part a few years earlier in:
(1) failing to attach consumer domestic travel incentive coupons when submitting tickets to the industry clearinghouse;
(2) unauthorizedly taking additional people on business trips at company expense;
(3) submitting claims for commissions on transactions for which commissions were not allowed; and
(4) posting frequent charge-backs to his son's credit cards.
I see little similarity between the similar acts evidence and the crimes on trial, except maybe a possible general tendency to engage in conduct that some might regard as fraudulent.
The state fails to address the indispensable requirement that this kind of evidence be so strikingly similar to the crimes charged that the commission of the one establishes the commission of the crime on trial. In Heuring v. State, 513 So.2d 122 (Fla.1987), the court explained the striking similarity requirement thus:
"Similar fact evidence that the defendant committed a collateral offense is inherently prejudicial. Introduction of such evidence creates the risk that a conviction will be based on the defendant's bad character or propensity to commit crimes, rather than on proof that he committed the charged offense. Such evidence is, therefore, inadmissible if solely relevant to bad character or propensity to commit the crime. To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses." [e.s.]
*483 513 So.2d at 124. The state, the proponent of the evidence, has failed to demonstrate how the later acts can even be likened to the charged acts, much less show a strikingly similarity. The state has not shown how this evidence does anything more than possibly suggest a general tendency to cheat.
The state's use of the similar acts evidence in this case expands the admission of Williams rule evidence beyond any legitimate use. As I said, the evidence here does little more than suggest a propensity to stretch travel industry practices to increase his compensation. As one critic of the use of similar fact evidence in familial sexual battery cases has said:
"if the charged and uncharged crimes are only generally similar, then the uncharged crime proves the charged crime only by proving propensity. It is the difference between saying `the defendant is the kind of person who commits crimes like this' and saying `the defendant is the person who commit[ted] this crime.'"
Richard J. Sanders, A Dangerous Bend in an Ancient Road: The Use of Similar Fact Evidence for Corroboration, 74 FLA. BAR J. 40, 44 (2000).
I cannot agree that this evidence was harmless. In fact I am confident that the improper admission of the similar acts evidence in this case actually affected the jury's decision. Certainly the state has done nothing to show beyond a reasonable doubt that it did not. See Goodwin v. State, 751 So.2d 537 (Fla.1999) (if erroneous judicial ruling is to be found harmless, court must first evaluate impact of error in light of overall strength of state's case and defenses asserted and then conclude beyond reasonable doubt that verdict could not have been affected by erroneous ruling); Heuss v. State, 687 So.2d 823 (Fla. 1996) (same); State v. DiGuilio, 491 So.2d 1129 (Fla.1986) (same); see also Czubak v. State, 570 So.2d 925, 928 (Fla.1990) (erroneous admission of collateral crimes evidence is presumptively harmful); Castro v. State, 547 So.2d 111, 116 (Fla.1989) (same).