865 So.2d 640 (2004)
Jerry D. ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-180.
District Court of Appeal of Florida, Second District.
February 13, 2004.
*641 CANADY, Judge.
Jerry D. Anderson appeals the summary denial of his motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Because we conclude that there has been no conclusive showing that Anderson is entitled to no relief, we remand to the trial court for further proceedings.
Anderson makes claims based on ineffective assistance of counsel and an error in the sentencing guidelines scoresheet used in his sentencing. We conclude that the trial court's summary denial of Anderson's ineffective-assistance-of-counsel claims should be affirmed and will not further address those claims. We conclude, however, that the summary denial of Anderson's scoresheet-error claim should be reversed.
In April 1997, Anderson was charged by information with attempted murder in the second degreea violation of section 782.04(2), Florida Statutes (supp.1996) for an offense that allegedly occurred on March 8, 1997. In October 1997, Anderson entered a no contest plea and was sentenced to two years' community control followed by five years' probation. In April 2000, Anderson was charged with a probation violation. In February 2001, he was found guilty and sentenced to ninety months in prison.
The sentencing court utilized a Florida Rule of Criminal Procedure 3.990(a) sentencing guidelines scoresheetthe scoresheet used under the 1994 guidelines, which are applicable to the charged offense. The scoresheet used by the sentencing court reflects 137 total sentence points and a sentencing range of 81.75 to 136.25 months.
The scoresheet error alleged by Anderson relates to the scoring of the primary offense level. For reasons that are not discernable from the record before us, the offense of attempted murder in the second degree charged against Anderson was scored as a level 9 offense (91 points). As the postconviction court recognized, this scoring of the primary offense level was an error which resulted in an increase *642 in the total sentence points calculated on the scoresheet.
The scoring of an inchoate crimesuch as attempted second-degree murderis based on the offense level that would have been applicable had the crime been completed. Under the applicable statutes, second-degree murder was a level 10 offense and attempted second-degree murder should have been scored at two offense levels below the completed crime. See § 921.0012, Fla. Stat. (Supp.1994); § 777.04(4)(a), Fla. Stat. (1993); see also Fla. R.Crim. P. 3.702(d)(6). Anderson's correct primary offense level thus was level 8 rather than the level 9 reflected on the scoresheet used by the sentencing court. With the primary offense scored correctly at level 8 (74 points), Anderson's scoresheet would reflect 120 total sentence points and a sentencing range of 69 to 115 months.
The postconviction trial court concluded that Anderson "was not adversely affected" by the scoresheet error because the ninety-month sentence previously imposed "is within the corrected range." In reaching the conclusion that Anderson was not entitled to relief, the postconviction court relied on Heggs v. State, 759 So.2d 620 (Fla.2000), and Hummel v. State, 782 So.2d 450 (Fla. 1st DCA 2001). In Heggs, which invalidated the statute adopting the 1995 sentencing guidelines, the supreme court held that "if a person's sentence imposed under the 1995 guidelines could have been imposed under the 1994 guidelines (without a departure), then that person shall not be entitled to relief under our decision here." 759 So.2d at 627. In Hummel, the First District stated that the supreme court had in Heggs "announced a new harmless error analysis to be applied in dealing with scoresheet inaccuracies." 782 So.2d at 451. The First District thus concluded that the Heggs standard for determining whether a defendant is entitled to relief is generally applicable to claims based on scoresheet errors and not limited to errors arising from the use of the invalid 1994 guidelines.
This court has, however, not understood Heggs as establishing such a generally applicable standard for determining whether scoresheet errors require resentencing. On the contrary, in Voss v. State, 808 So.2d 282 (Fla. 2d DCA 2002), Collins v. State, 788 So.2d 1109 (Fla. 2d DCA 2001), and Bigham v. State, 761 So.2d 431 (Fla. 2d DCA 2000)which were decided after Heggswe have adhered to the view that a scoresheet error, like the error shown by Anderson, requires resentencing unless it can be shown conclusively that the same sentence would have been imposed if the corrected scoresheet had been used by the sentencing court. See also Sprankle v. State, 662 So.2d 736, 737 (Fla. 2d DCA 1995) (holding that scoresheet error was basis for relief under motion to correct illegal sentence even where sentence imposed using incorrect scoresheet was "still within the permitted range of punishment" under the correct scoresheet and stating that "[w]hen a corrected scoresheet places the defendant in a different cell, the error cannot be presumed to be harmless, unless the record conclusively demonstrates that the trial court would have given the same sentence had it known the correct score").
In sum, we employ the would-have-been-imposed standard for determining whether scoresheet errors require resentencing, while the First District under Hummel uses the could-have-been-imposed standard adopted from Heggs. Anderson would not be entitled to relief under the could-have-been-imposed standard articulated in Hummel. But he is entitled to relief under the would-have-been-imposed standard utilized in this district because *643 there has been no conclusive showing that the trial court would have imposed the same sentence if it had utilized a correctly calculated scoresheet.
We recognize that the sentencing transcript or other record documents may conclusively demonstrate that the sentence imposed was not affected by the scoresheet error. If the trial court determines on remand that the record conclusively refutes Anderson's claim, it will be necessary for the trial court to enter a new order denying relief and to attach to the order the portions of the sentencing transcript or other record documents that conclusively show that Anderson is not entitled to relief. Otherwise, Anderson must be resentenced using a corrected scoresheet.
We acknowledge that our decisions in Voss, Collins, and Bigham are inconsistent with the First District's decision in Hummel, and therefore certify direct conflict pursuant to article V, section 3(b)(4), Florida Constitution, and Florida Rule of Appellate Procedure 9.030(a)(2)(A)(vi).
Reversed and remanded with instructions; conflict certified.
DAVIS, J., Concurs.
ALTENBERND, C.J., Concurs with opinion.
ALTENBERND, Chief Judge, Concurring.
I fully concur in this opinion; however, I am not convinced that the standard currently utilized by either the First District or the Second District to determine the harmfulness of a scoresheet error is the optimal standard. I believe there is a middle ground that would be a better standard to determine whether a scoresheet error warrants resentencing. This issue is important because it affects virtually all scoresheet errors for offenses committed after 1993.
In the era when scoresheets had cells, a scoresheet error was treated as harmless error if the error was insufficient to move the sentence from one cell to another. See Sellers v. State, 578 So.2d 339 (Fla. 1st DCA 1991); see also Fla. R.Crim. P. 3.988(c). Because most cells contained a range of twenty or more points, it was common for an error of fifteen points to be harmless, while an error of more than twenty-five points was usually harmful.
In 1994, the law changed and cells were replaced by a sentencing system that permitted the trial court to adjust a sentence upward or downward twenty-five percent from a term of months established by the scoresheet. Thus, the scoresheet created one broad cell for use in most cases. Under this system, a one-point error entitles a prisoner to relief if he or she received the maximum permissible sentence. Alternatively, depending upon the test used to determine harmfulness, a large error can entitle a prisoner to no relief if he or she received a sentence in the middle or lower portion of the range.
In 1998, the law changed again. Under the new Criminal Punishment Code, if a sentence of imprisonment is authorized, the maximum sentence is never less than the statutory maximum and the scoresheet determines the lowest permissible sentence in the absence of a reason for a downward departure sentence. See § 921.002, Fla. Stat. (Supp.1998); see also Fla. R.Crim. P. 3.704.
If one relies on Heggs, 759 So.2d at 627, to determine the harmfulness of a scoresheet error, then under the 1994-95 law the error must often be very large before it is harmful. Under the Criminal Punishment Code, the sentence would have to exceed the statutory maximum before it was deemed harmful. In essence, the *644 scoresheet error is harmful only if it renders the sentence facially illegal.[1] This standard seems too high. It compels prisoners to serve sentences that were entered in error and that would almost certainly not have been entered if the trial judge had relied upon a correct scoresheet.
On the other hand, this court's decisions in Voss, 808 So.2d at 282-83, Collins, 800 So.2d at 661, and Bigham, 841 So.2d at 645, arguably apply a DiGuilio standard in the context of a postconviction proceeding. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Those decisions prohibit the trial court from denying a postconviction motion unless the attachments show conclusively that the trial judge would have imposed the same sentence despite the error. On direct appeal, the State is required to prove that a preserved sentencing error was harmless beyond a reasonable doubt. See Johnson v. State, 855 So.2d 1157 (Fla. 4th DCA 2003). This is a reasonable standard on direct appeal. However, in the context of a postconviction motion, the defendant should have a threshold burden to establish that an error was harmful.
The courts cannot impose a structure of cells upon the more recent sentencing systems. It seems to me, however, that we might establish a level of error at which the sentencing was presumptively harmful. In this case, for example, the midpoint of the range under the scoresheet used at sentencing was 109 months. The correct midpoint was ninety-two months. His sentence was ninety months. The seventeen-point shift in the midpoint is an error of about fifteen percent on the first scoresheet. That is enough to convince me that it is probable that the trial judge would have imposed a lesser sentence had he used a correct scoresheet. I would suggest that any scoresheet error that reduced the midpoint of the scoresheet by ten percent or more should be treated as presumptively harmful with the burden placed on the State to establish that the error was harmless beyond a reasonable doubt. On the other hand, any error less than ten percent should be treated as presumptively harmless with the burden placed upon the defendant to establish that the error was actually harmful in his or her case.
NOTES
[1] I would note that if the supreme court decides to adopt the First District's approach to these cases, it can soon remove the reference to an "incorrect calculation" from Florida Rule of Criminal Procedure 3.800(a) because the only calculations that will be subject to correction will be those that also produce an illegal sentence for purposes of rule 3.800(a).