CANADY, Judge.
Clifton Gill appeals an upward departure sentence imposed under the 1994 sentencing guidelines in a Heggs[1] resentencing proceeding. The State cross-appeals the sentence. Both Gill and the State challenge the trial court’s determination concerning the offense severity level on Gill’s guidelines scoresheet. Gill also contends that the departure was imposed for an improper reason and was unsupported by the facts. We conclude that both Gill’s challenge to the upward departure and the State’s challenge to the determination concerning offense severity level have merit. We remand for resentencing with a corrected scoresheet to a guidelines sentence.
Gill was convicted of offenses including first-degree felony DUI manslaughter with failure to give information and render aid in violation of section 316.193(3)(c)(3)(b), Florida Statutes (Supp.1996). Gill’s offenses were committed on April 30, 1997. He was initially sentenced under the 1995 guidelines for the DUI manslaughter offense to a term of fourteen years in prison followed by five years of probation. He successfully sought postconviction relief under Heggs. In the resentencing proceeding giving rise to the sentence now under review, Gill’s Florida Rule of Criminal Procedure 3.990(a) sentencing guidelines scoresheet reflects an offense severity level of 8 for the DUI manslaughter offense, total sentence points of 140.2, and a maximum state prison sanction of 140.25 months (11.68 years).

The Unjustified Upward Departure

The sentencing court imposed an upward departure sentence of thirteen years in state prison, followed by five years on probation. In its written reasons for departure filed pursuant to section 921.001(6), Florida Statutes (1993), the sentencing court based the departure on its determination that Gill “exhibited a flagrant disregard for the safety of others,” supported by two findings of fact: “1. The volume of alcohol in the defendant’s system was nearly three times the legal limit. 2. This crime occurred on one of the busi *990 est roadways in Manatee County during the evening hours on .Wednesday[,] April 30th, 1997.”
The State concedes that “there was no evidence presented that the intersection was under heavy traffic conditions at the time of the accident.” The State further concedes that the “extent of intoxication standing alone is not a valid reason to depart because it is already an element of the offense.” See Deatrich v. State, 534 So.2d 903 (Fla. 2d DCA 1988); cf. Manis v. State, 528 So.2d 1342, 1343 (Fla. 2d DCA 1988) (holding that defendant’s “actions in driving his vehicle on a busy street in a highly intoxicated condition to the extent that many people, in addition to the two who died as a result of his actions, were placed in extreme jeopardy of serious bodily injury” was a proper basis for departure sentence). Accordingly, the State correctly acknowledges that “the trial court’s reasons for departing upward from the 1994 guidelines were invalid.”

The Offense Seventy Level Scoresheet Error

Both the State and Gill argue that the trial court incorrectly determined that Gill’s offense was a level 8 offense. Gill contends that level 7 was the proper offense severity level, while the State asserts that level 9 was the appropriate level. We are thus confronted with three different theories of how the offense severity level for violation of section 316.193(3)(c)(3)(b) should be determined. The resolution of this question turns on the effect of the provision of section 921.0012(3)(i), Florida Statutes (Supp.1996), establishing the offense severity level for violations of section 316.193(3)(c)(3)(b). The different theories concerning the resolution of this question stem from the circumstance that Gill’s offense was committed and section 316.193(3)(c)(3)(b) and the pertinent provision of section 921.0012(3)© were enacted and became effective during the period between the October 1, 1995, effective date of the 1995 sentencing guidelines and the May 24, 1997, effective date of the legislature’s readoption of the 1995 guidelines following Heggs. See Trapp v. State, 760 So .2d 924, 928 (Fla.2000).
Before section 316.193(3)(c)(3)(b) establishing the first-degree felony offense for DUI manslaughter with failure to give information and render aid became effective, there was no first-degree felony offense for DUI manslaughter. See § 316.193(3)(c)(3), Fla. Stat. (1995). Under the 1994 guidelines, DUI manslaughter. — a second-degree felony — was ranked as a level 8 offense. See 921.0012, Fla. Stat. (1993). During the 1996 legislative session, in conjunction with its establishment of the new first-degree felony offense of DUI manslaughter with failure to give information and render aid, the legislature amended the provisions of section 921.0012 by adding a provision placing the newly established offense in the offense severity ranking chart at level 9. See § 921.0012(3)®, Fla. Stat. (Supp.1996); ch. 96-388, § 51, at 2351, Laws of Fla.
The trial court concluded that the 1996 amendment to section 921.0012(3)© was invalidated by the subsequent invalidation of the 1995 guidelines in Heggs. The trial court also concluded that the adoption of section 316.193(3)(c)(3)(b) “validly created a new degree of DUI/manslaughter.” The trial court reasoned that the offense severity ranking for Gill’s offense should be determined under the 1994 guidelines provision ranking DUI manslaughter. See section 921.0012, Fla. Stat. (1993). The trial court thus scored Gill’s offense based on the level 8 ranking for the second-degree DUI manslaughter offense in the 1994 guidelines offense severity ranking chart.
*991 Gill agrees with the trial court’s conclusion that the 1996 amendment to section 921.0012(3)© was invalid but argues that the trial court erred by applying the ranking for second-degree DUI manslaughter under the 1994 guidelines to Gill’s offense of first-degree DUI manslaughter with failure to give information and render aid. Gill contends that since there was no valid provision in the 1994 guidelines offense severity ranking chart pertaining to the first-degree felony offense for which Gill was convicted, his offense should have been scored pursuant to the requirement of section 921.0013(3), Florida Statutes (1993), that a first-degree felony offense not listed in the offense severity ranking chart be ranked within offense level 7.
The State argues that the ranking of Gill’s offense was not affected by the declaration of the unconstitutionality of the 1995 guidelines in Heggs. The State contends that the 1996 amendment to the guidelines offense severity ranking chart effectively amended the 1994 guidelines. According to the State, the validity of the establishment of the level 9 ranking for DUI manslaughter with failure to provide information and to render aid thus did not depend on the legislature’s reenactment of the 1995 guidelines amendments in 1997.
The State’s analysis of this point is correct. The unconstitutionality of the legislation adopting the 1995 version of the guidelines offense severity ranking chart did not prevent the legislature from amending the offense severity ranking chart in 1996. The fact that the legislature had made an unconstitutional attempt to amend the guidelines did not divest the legislature of its power to make subsequent constitutionally valid amendments to the guidelines. In view of the decision in Heggs, the 1996 amendment to the offense severity ranking chart operated, as the State argues, as an amendment to the 1994 guidelines. The 1996 legislation establishing a level 9 severity ranking for the offense of DUI manslaughter with failure to provide information and to render aid therefore was a valid legislative enactment. Accordingly, Gill should have been sentenced with a scoresheet on which his offense was scored as a level 9 offense.

The Legal Effect of the Scoresheet Error

The State argues that if level 9 was the correct offense level for Gill’s crime, resentencing of Gill is unnecessary because the thirteen-year prison sentence imposed was a legal nondeparture sentence. The State points out that when scored using a level 9 offense severity ranking, Gill’s presumptive prison sentence would be 129.2 months (10.76 years), with a minimum sentence of 96.6 months (8.07 years) and a maximum sentence of 161.5 months (13.458 years). The thirteen-year prison sentence imposed on Gill thus was within the permissible sentencing range. The State takes the position that resentencing is unnecessary because the trial court — using a correct sentencing scoresheet — could have imposed the same sentence that was imposed on Gill.
We have, however, rejected the view that resentencing is always unnecessary when an incorrect scoresheet has been utilized in imposing a sentence that falls within the permissible guidelines range. See Anderson v. State, 865 So.2d 640, 642 (Fla. 2d DCA 2004). But see Hummel v. State, 782 So.2d 450 (Fla. 1st DCA 2001) (holding that scoresheet error does not require re-sentencing if sentence imposed could have been imposed under corrected scoresheet). We have allowed sentences based on incorrect scoresheets to stand only when the record demonstrates that the sentence would have been imposed by the sentencing court if the corrected scoresheet had been used. See Anderson, 865 So.2d at 642.
*992 We have no basis for concluding that the resentencing court would have imposed the thirteen-year prison sentence if the court had employed a correct scoresheet. We cannot rely for that purpose on the resen-tencing court’s imposition of the invalid departure sentence. It is inappropriate for us to assume that the trial court’s exercise of its discretion within the permissible sentencing range would have been guided by the considerations' — for which there was no factual or legal support — on which the unjustified departure sentence was based.[2]
Gill is thus entitled to be resentenced based on a corrected scoresheet. The sentence imposed by the trial court on remand may not be a departure sentence. See Shull v. Dugger, 515 So.2d 748 (Fla.1987); see also Patten v. State, 531 So.2d 203 (Fla. 2d DCA 1988).

Conclusion

We therefore reverse Gill’s sentence and remand for the imposition of a guidelines sentence utilizing a corrected scoresheet.
Reversed and remanded.
CASANUEVA and SILBERMAN, JJ., Concur.

. Heggs v. State, 759 So.2d 620 (Fla.2000). In Heggs the court held that the 1995 sentencing guidelines were unconstitutional because the legislation adopting them violated the single-subject requirement of article III, section 6, Florida Constitution.

. The instant scoresheet error case involving an invalid upward departure sentence is distinguishable from the cases involving score-sheet error where a valid upward departure sentence was imposed. Such cases involving a valid departure sentence do not necessarily require resentencing under a corrected score-sheet. See State v. Mackey, 719 So.2d 284, 285 (Fla.1998) (rejecting per se reversal rule for scoresheet errors in case where grounds for upward departure were not challenged and incorrect guidelines scoresheet utilized by trial court "provided for a lower recommended sentencing range" than correct scoresheet); Hines v. State, 587 So.2d 620, 621 (Fla. 2d DCA 1991) (upholding upward departure sentence notwithstanding improper assessment of additional victim injury points on scoresheet and stating that "we find beyond a reasonable doubt that the trial judge would have imposed the same departure sentence notwithstanding the scoresheet error”).