787 So.2d 265 (2001)
Timothy REGAN, Appellant,
v.
STATE of Florida, Appellee.
No. 1D00-3722.
District Court of Appeal of Florida, First District.
May 29, 2001.
*266 Appellant, pro se.
Robert A. Butterworth, Attorney General; James W. Rogers, Tallahassee, for Appellee.
Prior report: 730 So.2d 828.
PER CURIAM.
The appellant challenges an order of the trial court summarily denying as untimely his motion filed pursuant to Florida Rule of Criminal Procedure 3.850. We reject the appellant's argument that the supreme court decision in Heggs v. State, 759 So.2d 620 (Fla.2000), created a change in the law that should be applied retroactively such that the appellant's motion, filed beyond the two-year limitation of rule 3.850, should be considered timely. We accordingly affirm the summary denial, but certify two questions to the supreme court in this regard.
According to the appellant's motion, he was sentenced pursuant to a negotiated plea bargain in which he, the state, and the trial court agreed that he would be sentenced to the low end of the sentencing guidelines. The appellant alleges that his sentence was derived from the 1995 guidelines, which the Florida Supreme Court later declared to be unconstitutional in Heggs v. State, 759 So.2d 620 (Fla.2000). He further alleges that he committed his offense within the window period during which the guidelines were unconstitutional as determined by Trapp v. State, 760 So.2d 924 (Fla.2000). He seeks resentencing to the low end of the 1994 guidelines, or alternatively, to withdraw his plea and proceed to trial on the original charges.
The trial court denied the appellant's motion as untimely in that it was filed more than two years after his conviction and sentence became final. See Fla. R.Crim. P. 3.850. His timely appeal followed.
*267 Florida Rule of Criminal Procedure 3.850(b) specifies that a motion filed pursuant to this section must be filed within two years of the date that the conviction and sentence become final. The rule further provides for two exceptions relevant to the analysis in this case: (1) when the claims asserted in the motion are based on newly discovered facts that were unknown to both the movant and movant's counsel, and could not have been ascertained through due diligence, and (2) when the claims asserted are based on a fundamental, constitutional right that was not established within the two-year time period provided by the rule, and which has been held to apply retroactively. See id. Retroactivity is determined by subjecting the change of law to the three-part test of Witt v. State, 387 So.2d 922 (Fla.1980).
The appellant does not argue, nor do we conclude, that the Heggs decision is a newly discovered fact as that term is used in rule 3.850(b)(1), because the rule contemplates a fact in the sense of evidence, which is anything which tends to prove or disprove a material fact. See, e.g., Clugston v. State, 765 So.2d 816, 818 (Fla. 4th DCA 2000)(stating that newly discovered evidence is excepted from the two-year time limit of rule 3.850(b)); Jones v. State, 591 So.2d 911, 915 (Fla.1991) (holding that in order to provide relief [pursuant to rule 3.850(b)(1)], the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial). The existence of the change in the law at issue here does not have a tendency to prove or disprove guilt or innocence. It merely affects sentencing, once guilt has been established. If this change in the law is considered a "fact" as contemplated by rule 3.850(b)(1), then it follows that every change in the law will also necessarily become a fact as per this rule, and will remove entirely any need to perform a Witt analysis. We therefore acknowledge apparent conflict on this point with Murphy v. State, 773 So.2d 1174 (Fla. 2nd DCA 2000), and Jenkins v. State, 771 So.2d 37 (Fla. 4th DCA 2000).
Thus, the question is whether the decision in Heggs constitutes a right of constitutional and fundamental significance under the analysis in Witt v. State, 387 So.2d 922 (Fla.1980). The supreme court in Witt held that a change in the law will not apply retroactively under rule 3.850 unless the change: (1) emanates from the state supreme court or the United States Supreme Court, (2) is constitutional in nature, and (3) constitutes a development of fundamental significance. Id. at 931. Changes of law which constitute a development of fundamental significance will ordinarily fall into one of two categories: (a) changes of law which remove from the state the authority or power to regulate certain conduct or impose certain penalties, or (b) changes of law which are of sufficient magnitude to require retroactive application as ascertained by the three-part test of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Witt 387 So.2d at 929. This test requires consideration to be given to: (i) the purpose to be served by the new rule; (ii) the extent of reliance on the old rule; and (iii) the effect that retroactive application of the rule will have on the administration of justice. See State v. Callaway, 658 So.2d 983, 987 (Fla. 1995).
It is critical to distinguish the "jurisprudential upheavals" in the law that warrant retroactive application under Witt from those which, in contradistinction, are mere "evolutionary refinements." See Witt, 387 So.2d at 929-930. Examples of these refinements would be changes made in the area of evidence admissibility, or alterations *268 of procedural rules, or a call for proportionality review of capital cases. Id. The creation of these types of rights, or the removal of such rights which formerly existed, does "not compel an abridgement of the finality of judgments. To allow them that impact would ... destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit." Id. Retroactivity, then, must only be afforded to those changes of the law which perform a much more significant and fundamental function than merely fine-tuning existing law, even if the change of law is constitutional in nature.
In the instant case, the Heggs decision did emanate from the Florida Supreme Court, and it is constitutional in nature in the sense that the enacting legislation violated the single-subject provisions of the state constitution. The more difficult issue is whether the change of law created by Heggs constitutes a development of fundamental significance. For the reasons that follow, we hold that it does not.
First, the Heggs decision was not the type of change of law that removed from the state of Florida the power to regulate certain conduct or impose certain penalties. Compare Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977)(divesting all states of the authority to impose the death penalty for the rape of an adult woman); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)(imposing upon the states the requirement to provide counsel for all indigent defendants criminally charged). Unlike these national landmark decisions, the change of law created by the Heggs decision does not divest the state of Florida of any powers. Therefore, the Heggs change of law must be of sufficient magnitude to require retroactive application for it not to, by default, fall into the category of an evolutionary refinement in the criminal law. See Witt, 387 So.2d at 929-930. Basically, the question boils down to whether the doctrine of finality should be abridged in order to ensure fairness and uniformity in individual adjudications. See id. at 925. Therefore, the question remains whether the Heggs decision is of sufficient magnitude to require retroactive application as dictated by the three-part test of Stovall and Linkletter.
As to the first prong, the purpose of the rule announced by the supreme court in Heggs v. State, 759 So.2d 620 (Fla.2000), was not to correct any fundamental sentencing unfairness or to even correct a problem with the guidelines. The purpose of the Heggs decision was to uphold the single subject rule which prevents the legislature from passing multiple laws that have no logical connection to one another under one title. Heggs, 759 So.2d at 623. Indeed, the supreme court was aware that its decision in Heggs would produce the end-result of having to entertain appeals from defendants who were sentenced pursuant to the 1995 guidelines and intentionally narrowed the scope of individuals who would be entitled to relief:
We realize that our decision here will require, among other things, the resentencing of a number of persons who were sentenced under the 1995 guidelines, as amended by chapter 95-184. However, only those persons adversely affected by the amendments made by chapter 95-184 may rely on our decision here to obtain relief. Stated another way, in the sentencing guidelines context, we determine that if a person's sentence imposed under the 1995 guidelines could have been imposed under the 1994 guidelines (without a departure), *269 then that person shall not be entitled to relief under our decision here.
Heggs, 759 So.2d at 627.
In short, the only reason that the 1995 sentencing guidelines were declared unconstitutional was because the guidelines happen to have been part of Chapter 95-184, which contained both civil and criminal laws that had no logical connection to one another. See id. Absent this technical defect, there was no inherent problem with the 1995 guidelines. Thus, the effect that the rule announced in Heggs has on sentencing is only a coincidental by-product of the single subject violation. Compare, e.g., Hale v. State, 630 So.2d 521 (Fla.1993)(holding that the decision to prevent the practice of consecutively stacking habitual offender sentences for violations arising from a single criminal episode should apply retroactively because the concern for fairness and uniformity in individual cases outweighed any adverse impact that retroactive application of the Hale rule might have on decisional finality). We therefore conclude that the Heggs decision does not meet the first prong of the Stovall/Linkletter test.
The second facet of the Stovall/Linkletter test takes into consideration the reliance by the courts on the old rule. This test would be applicable where an existing rule of law is changed or reversed, as was the case with Hale, cited above. However, this second prong is not applicable in the present situation because the Heggs decision did not replace an old rule with a new rule. It merely prevented use of the 1995 guidelines during a two-year window, and only for those defendants who were adversely affected.
The third factor for consideration under the Stovall/Linkletter test is the possible adverse effect on the administration of justice and decisional finality that retroactive application of the rule announced in Heggs might have, and whether that adverse effect would be serious enough to outweigh the concern for fairness and uniformity in individual cases.
As stated above, only those defendants whose sentences under the 1995 guidelines constitute a departure under the 1994 guidelines are entitled to relief under Heggs v. State. Thus, the Heggs decision itself does not provide for uniformity in individual cases, but rather it calls for a case-by-case analysis of whether the individual defendant could have been sentenced to his present sentence without a departure under the 1994 guidelines. Id. at 627. Moreover, it is worth noting that in Witt, the supreme court held that post-conviction relief proceedings may not be used to correct individual miscarriages of justice in the "absence of fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding." Witt, 387 So.2d at 929. The declaration that the 1995 sentencing guidelines are unconstitutional because of the enacting legislation does not, in and of itself, amount to a constitutional law change which casts serious doubt on the veracity or integrity of the original trial proceeding. Further, being sentenced pursuant to a guideline is not a constitutional right. See Hall v. State, 767 So.2d 560 (Fla. 4th DCA 2000), rev. granted Hall v. State, No. SC00-2358, ___ So.2d ___ (Fla. April 25, 2001); see also United States v. Brierton, 165 F.3d 1133, 1139 (7th Cir.1999)(stating that because "there is no constitutional right to sentencing pursuant to the Guidelines, the discretionary limitations the Guidelines place on the sentencing judge do not violate a defendant's right to due process by reason of vagueness"); United States v. Wivell, 893 F.2d 156 (8th Cir.1990)(stating that "[b]ecause there is no constitutional right to sentencing guidelinesor, more *270 generally, to a less discretionary application of sentences than that permitted prior to the Guidelinesthe limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague.").
Retroactive application of the Heggs decision would adversely impact the administration of justice and decisional finality because it would require Florida courts to readdress a significant number of criminal cases that have already become final. For the reasons discussed above, we conclude that this adverse impact would not be outweighed by the concern for fairness and uniformity in individual cases. Accordingly, we hold that the change of law created by Heggs, while constitutional in nature, is not of such fundamental significance as to warrant retroactive application. However, because this issue is one of great public importance, we certify the following questions to the supreme court:
WHETHER THE CHANGE OF LAW CREATED BY THE HEGGS DECISION SHOULD BE DEEMED A "NEWLY DISCOVERED FACT" AS CONTEMPLATED BY RULE 3.850(B)(1), WHEREBY AN APPELLANT MAY RAISE A HEGGS-BASED CLAIM FOR POSTCONVICTION RELIEF MORE THAN TWO YEARS AFTER THE APPELLANT'S JUDGMENT AND CONVICTION BECAME FINAL?
And,
WHETHER THE CHANGE OF LAW CREATED BY THE HEGGS DECISION SHOULD BE DEEMED TO APPLY RETROACTIVELY, SUCH THAT AN APPELLANT MAY RAISE A HEGGS-BASED CLAIM FOR POSTCONVICTION RELIEF MORE THAN TWO YEARS AFTER THE APPELLANT'S JUDGMENT AND CONVICTION BECOME FINAL?
Because the appellant's instant rule 3.850 motion is untimely, the trial court's denial of the motion is affirmed.
ALLEN, VAN NORTWICK and POLSTON, JJ., concur.