887 So.2d 1191 (2004)
Gregory BANKS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-2733.
Supreme Court of Florida.
October 14, 2004.
Stephen F. Hanlon, Susan L. Kelsey and Kevin M. O'Brien of Holland and Knight, LLP, Tallahassee, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, James W. Rogers, Bureau Chief, Criminal Appeals and Alan R. Dakan, Assistant Attorney General, Tallahassee, FL, for Respondent.
PER CURIAM.
We have for review the decision of the First District Court of Appeal in Banks v. State, 801 So.2d 153 (Fla. 1st DCA 2001), which certified two questions of great public importance. We have jurisdiction, see art. V, § 3(b)(4), Fla. Const.[1] We approve the First District's decision.

*1192 STATEMENT OF THE FACTS AND CASE
On May 21, 2001, petitioner Gregory Banks filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 based upon this Court's decision in Heggs v. State, 759 So.2d 620 (Fla.2000). According to his motion, on October 7, 1996, Banks entered into a negotiated plea of nolo contendere and an agreed sentence based on his belief that the 1995 sentencing guidelines were valid. He claimed that he entered into a plea at the top of the 1994 guidelines in order to avoid a sentence under the harsher 1995 guidelines and that he would not have entered into the plea had he known those guidelines were invalid. Attached to his motion were two sentencing guideline scoresheets, one representing the sentencing range for the charges he pled to under the 1995 guidelines and one representing the range under the 1994 guidelines. Under the 1995 guidelines, the permitted sentencing range was 133.35 to 222.25 months, while under the 1994 sentencing guidelines, the permitted sentencing range was 80.1 months to 133.5 months.[2] In the motion, Banks requested alternative forms of relief, including: (1) resentencing to 80.1 months, the low end of the 1994 guidelines; (2) allowing him to withdraw his plea in favor of a new plea agreement; or (3) affording the State the chance to withdraw from the original plea agreement and proceed to trial.
The trial court summarily denied Banks' motion, attaching a copy of Banks' written plea agreement and transcripts from Banks' plea colloquy and sentencing hearing. In its order on Banks' postconviction motion, the trial court denied Banks' claim that he should be resentenced to the low end of the 1994 guidelines. The trial court noted that Banks had negotiated for a sentence of imprisonment for a term of years and not for a "minimum range" guidelines sentence. The trial court denied Banks' other requested relief, finding that the issues and arguments set forth in the motion were essentially identical to those that the court had previously considered in Banks' earlier 3.800 motion to correct an illegal sentence.
The agreement attached to the trial court's order indicated that in exchange for Banks' plea of nolo contendere, the State merged the charges from two other cases with the case in which Banks entered the plea and that Banks would receive a sentence of eleven years, or 132 months. Thus, although Banks' agreement to a sentence of 132 months was within the range shown on the 1994 guidelines scoresheet attached to his postconviction motion, it was at the very top of that range and only 1.5 months short of the maximum sentence of 133.5 months. The *1193 written agreement also reflected that Banks understood his sentence would be imposed under the uniform sentencing guidelines.[3]
On appeal, the First District Court of Appeal affirmed the trial court's summary denial. See Banks, 801 So.2d at 154. The First District first determined that Banks was not entitled to resentencing pursuant to Heggs because (1) his plea was for a negotiated term of years and was not tied to the guidelines and (2) his sentence could have been imposed under the 1994 guidelines. Id. Furthermore, relying on its decision in Booker v. State, 771 So.2d 1187 (Fla. 1st DCA 2000), review dismissed, 804 So.2d 328 (Fla.2001), the First District determined that Banks' claim to withdraw his plea also failed because his sentence fell within the range permissible under the 1994 guidelines. Id.[4] Moreover, the First District determined that even if Banks' claim had merit, his motion would have been untimely under its decision in Regan v. State, 787 So.2d 265 (Fla. 1st DCA 2001).

ANALYSIS
We conclude that Banks' sentence was valid under the 1994 sentencing guidelines and approve the First District Court of Appeal's decision to affirm the trial court's order denying postconviction relief.
At the time the 1995 sentencing guidelines were in place, Banks entered a plea and negotiated a sentence for a prison term that fell at the lower end of the 1995 sentencing guidelines but still within the 1994 sentencing guidelines. After Banks was sentenced, the 1995 guidelines were invalidated. See Heggs v. State, 759 So.2d 620 (Fla.2000). Because the 1995 sentencing guidelines were invalidated, they could not have legally superseded the 1994 guidelines; therefore, the 1994 guidelines were still in effect. Banks' sentence was legal under the 1994 sentencing guidelines.
Nonetheless, Banks sought postconviction relief arguing that he should be allowed to withdraw his plea, or he should be resentenced at the lower end of the 1994 guidelines (to comport with the negotiated sentence at the lower end of the 1995 guidelines), or he should be allowed to proceed to trial. The trial court denied postconviction relief, attaching Banks' plea agreement as record evidence that he is not entitled to relief since his sentencing fell within the 1994 guidelines. The First District agreed with the trial court and held that Banks could not challenge his *1194 sentence under rule 3.850 because his plea was for a negotiated term not tied to the sentencing guidelines, and because his sentence was legal under the 1994 sentencing guidelines. We agree with the trial court and the First District that Banks' sentence was valid under the 1994 guidelines and that the invalid 1995 sentencing guidelines are not a sufficient ground to grant postconviction relief.
In Heggs, we explicitly recognized that only those persons who had been adversely affected by reliance on the validity of the 1995 guidelines may be entitled to relief. We stated in Heggs:
[O]ur decision here will require, among other things, the resentencing of a number of persons who were sentenced under the 1995 guidelines, as amended by chapter 95-184. However, only those persons adversely affected by the amendments made by chapter 95-184 may rely on our decision here to obtain relief. Stated another way, in the sentencing guidelines context, we determine that if a person's sentence imposed under the 1995 guidelines could have been imposed under the 1994 guidelines (without a departure), then that person shall not be entitled to relief under our decision here.
Id. at 627. Hence, under Heggs, if a sentence imposed under the 1995 guidelines could have been imposed under the 1994 guidelines (without a departure), then that defendant is not entitled to relief. Heggs imposes a bright-line test that precludes individuals from challenging their plea agreements when the sentences imposed pursuant to those agreements could have been imposed under the 1994 guidelines without a departure.
It is undisputed that Banks' sentence could have been imposed without a departure under the 1994 sentencing guidelines. Banks negotiated a plea for a sentence of imprisonment for a term of years and not for a "minimum range" guidelines sentence. Under the 1994 guidelines, the allowable sentencing range was between 80.1 months and 133.5 months. Banks received a sentence of 132 months, thereby placing him within the acceptable range under the 1994 guidelines. Therefore, under the plain language of our decision in Heggs, relief must be denied.
We conclude that Banks has not been adversely affected by reliance on the 1995 guidelines because the sentence he ultimately received was a valid sentence under the 1994 guidelines.
Therefore, we approve the First District's decision in this case.
It is so ordered.
WELLS, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which PARIENTE, C.J., concurs.
ANSTEAD, J., dissenting.
Because this case was appealed from the trial court's summary denial of Banks' motion without an evidentiary hearing, rule 9.141(b)(2) of the Florida Rules of Appellate Procedure applied. Notably, the standard of review on appeal from such a denial is that "unless the record shows conclusively that the appellant is entitled to no relief, the order shall be reversed and the cause remanded for an evidentiary hearing or other appropriate relief." Fla. R.App. P. 9.141(b)(2)(D). Applying this standard, I cannot agree with the majority's approval of the district court's decision denying Banks a hearing on the merits of his claim.
I agree that Banks would not be entitled to resentencing because he entered into a negotiated plea for a term of years that was not specifically tied to the guidelines, *1195 i.e., the "low end," of the sentencing guidelines. However, that is not the issue here. Banks asserts that he relied on the validity and application of the 1995 guidelines in deciding to agree to his plea.[1] In support of this claim, as has already been noted, he alleges he accepted a sentence at the very top of the 1994 guidelines, thereby avoiding the possibility of a sentence under the much harsher 1995 guidelines. The limited record in this case contains nothing to refute Banks' claim that he would not have pled nolo contendere if he had known that the 1994 sentencing range represented the maximum punishment that could be imposed even if he went to trial and lost.[2] In other words, because the 1995 guidelines were invalid he would have had nothing to lose by going to trial since the top of the 1994 guidelines would have represented the harshest punishment possible.
The First District's decision relied on the two alternative grounds set out in Booker v. State, 771 So.2d 1187 (Fla. 1st DCA 2000) and Regan v. State, 787 So.2d 265 (Fla. 1st DCA 2001), to deny Banks' claim that he should be allowed to withdraw his plea. See Banks, 801 So.2d at 154 ("Because the appellant's sentence could have been imposed under the 1994 guidelines, his claim that he is entitled to withdraw his plea also fails. See [Booker]. Even if the appellant's claims had merit, his motion was untimely under our decision in Regan.").
Both the Second District Court of Appeal and the Fourth District Court of Appeal have come to the opposite conclusion on both of these issues and, in fact, have certified conflict with Booker and Regan in a number of cases. In addition, the First District itself has expressed serious concerns about these issues and their proper resolution.
In Cox v. State, 805 So.2d 1042, 1044 (Fla. 4th DCA 2002), for example, the Fourth District explained that the court had held "that defendants should have two years from the issuance of the supreme court's opinion in Heggs in which to raise it *1196 in a rule 3.850 motion, as the facts on which the claim is predicated could not have been known earlier." In Jones v. State, 781 So.2d 447 (Fla. 4th DCA 2001), Jones alleged in his rule 3.850 motion that he entered a plea to be sentenced at the bottom of the 1995 guidelines. Jones, 781 So.2d at 448. The trial court denied relief finding that Jones was sentenced to a term of years. Id. On appeal the Fourth District remanded, holding that no portion of the record was attached to the trial court's order to refute defendant's allegation that he pled to a guidelines sentence. Id. The district court noted that if defendant had pled to a term of years, he would not be entitled to relief in the way of a resentencing under Heggs unless his sentence exceeded the statutory maximum. Id.
Importantly, however, the court held that even if Jones was not entitled to resentencing under Heggs, he should be able to seek to withdraw his plea:
[E]ven if appellant is not entitled to relief under Heggs, the denial of the instant motion should be without prejudice to appellant's seeking to withdraw his plea as involuntarily entered based on the unconstitutional 1995 guidelines. See Mortimer v. State, 770 So.2d 743, 745 (Fla. 4th DCA 2000) (affirming summary denial of motion to correct sentence because it was not an illegal sentence, as it was within the 1994 sentencing guidelines range and was imposed pursuant to a plea agreement which did not clearly demonstrate that the parties and judge intended the sentence to be the lowest permissible guidelines sentence, but without prejudice to the defendant's challenging the voluntary and intelligent character of his plea by post-conviction proceedings); Murphy v. State, 773 So.2d 1174, 1175 (Fla. 2d DCA 2000).
Jones, 781 So.2d at 449. And in York v. State, 788 So.2d 296, 297 (Fla. 2d DCA 2001), the Second District explained that "the distinct differences between the 1994 and 1995 guidelines ranges" could provide a basis for an individual to "file a legally sufficient motion under rule 3.850 challenging the voluntary and intelligent nature of his [or her] plea." See also Gregg v. State, 839 So.2d 794 (Fla. 4th DCA 2003) (certifying conflict with Booker); Gonzalez v. State, 826 So.2d 410 (Fla. 2d DCA 2002) (certifying conflict with Booker); Carvello v. State, 824 So.2d 202 (Fla. 4th DCA 2002) (certifying conflict with Regan); Honeycutt v. State, 805 So.2d 987 (Fla. 4th DCA 2001) (certifying conflict with Regan); Murphy v. State, 773 So.2d 1174, 1175 (Fla. 2d DCA 2000) (en banc) (certifying conflict with Booker).
Moreover, it is apparent from the First District's decision in Booker that the First District has also been troubled by the issue:
Ordinarily, [Booker's] allegations of mistake and misinformation would be sufficient to state a prima facie case for relief.
It is a well-established principle of law that a defendant should be allowed to withdraw a plea of guilty where the plea was based upon a misunderstanding or misapprehension of facts considered by the defendant in making the plea.

See Forbert v. State, 437 So.2d 1079, 1081 (Fla.1983); see also e.g., Brown v. State, 245 So.2d 41 (Fla.1971) (holding that a judge should be liberal in the exercise of his discretion to allow withdrawal of a plea where it is shown that the plea was based upon a failure of communication or misunderstanding of the facts); Catinella v. State, 732 So.2d 444 (Fla. 4th DCA 1999) (reiterating that a plea of guilty should be entered *1197 voluntarily by one who is competent to know the consequences and should not be induced by fear, misapprehension, undue persuasion, promises, mistake, fraud, inadvertence or ignorance).
Booker v. State, 771 So.2d 1187, 1188 (Fla. 1st DCA 2000). In fact, the First District has allowed similar plea challenges in other cases. See, e.g., Richardson v. State, 829 So.2d 364, 365 (Fla. 1st DCA 2002) (remanding a Heggs claim for evidentiary hearing with the instructions: "If the appellant entered a straight up plea to the violation of probation, he is entitled to be resentenced under the 1994 guidelines; if the appellant's sentence was negotiated, he is entitled to withdraw his plea."); Hipps v. State, 790 So.2d 583, 584 (Fla. 1st DCA 2001) (distinguishing Booker and noting that appellant had the right to file a 3.850 motion seeking to withdraw his plea because his sentence could not be imposed under the 1994 sentencing guidelines).
In my view these decisions are correct in holding that the impact of our Heggs decision on negotiated pleas should be treated differently than the straight-forward sentencing issue we were addressing in Heggs. The majority simply fails to confront this distinction.

Heggs
In Heggs, we held that chapter 95-184, Laws of Florida, was unconstitutional because it violated the Florida Constitution's single subject rule and therefore it was "void in its entirety." See id. at 630; see also art. III, 6, Fla. Const.[3] Chapter 95-184 contained, among other provisions, the revised 1995 sentencing guidelines. In determining the individuals who would be entitled to relief based on the retroactive application of our decision, we explained:
[O]ur decision here will require, among other things, the resentencing of a number of persons who were sentenced under the 1995 guidelines, as amended by chapter 95-184. However, only those persons adversely affected by the amendments made by chapter 95-184 may rely on our decision here to obtain relief. Stated another way, in the sentencing guidelines context, we determine that if a person's sentence imposed under the 1995 guidelines could have been imposed under the 1994 guidelines (without a departure), then that person shall not be entitled to relief under our decision here.
Heggs, 759 So.2d at 627 (emphasis added). Thus, in Heggs we explicitly recognized that those persons who had been adversely affected by reliance on the validity of the 1995 guidelines may be entitled to relief. While resentencing was one legal possibility predicated on declaring chapter 95-184 unconstitutional, it was by no means the *1198 only impact of our decision nor was resentencing the only possible relief for those adversely affected by chapter 95-184. There is nothing in the opinion that would preclude an individual from filing a challenge to his or her agreement that was based on the assumed validity of the 1995 sentencing guidelines. Regardless of the specifics of the plea, the proper inquiry is whether an individual entered into the plea relying on the validity of the 1995 guidelines. That is what Banks alleges here.
Subsequent to our decision in Heggs, we have further explained how courts should determine the type of relief individuals may be entitled to where a negotiated plea is involved:
Generally, the relief granted to those entitled to it under Heggs is automatic resentencing under the guidelines in effect prior to the 1995 guidelines. In this case, however, the State argues that because it reduced the main offense from a first-degree felony to the lesser included second-degree felony, there should be no automatic resentencing. In particular, the State contends that the plea agreement included the fact that the State would recommend a guideline sentence, and that recommendation came with the State's understanding that the 1995 sentencing guidelines would provide the appropriate sentencing range. Thus, the State argues that it should be given the opportunity to vacate the judgment and sentence and reinstate the original charges.
Latiif v. State, 787 So.2d 834, 836 (Fla.2001). Thus, because the State had entered into a negotiated plea agreement with Latiif, an automatic resentencing under the 1994 guidelines was not appropriate. However, in Latiif, after discussing the various ways in which the district courts had addressed the issue of how Heggs should be applied in situations involving negotiated pleas, we adopted the reasoning advanced by the Second District in Sidell v. State, 787 So.2d 139 (Fla. 2d DCA 2001):
[The appellant] would be entitled to Heggs relief because his sentence constitutes a departure under the 1994 guidelines. This relief is not automatic, however, because the State gave up something as part of the plea agreement. "If the plea agreement is not binding upon the defendant, then it is not binding upon the state." Jolly v. State, 392 So.2d 54, 56 (Fla. 5th DCA 1981).
Latiif, 787 So.2d at 837 (quoting Sidell, 787 So.2d at 140). Although the adoption of the language from Jolly indicating that a plea that is not binding upon the defendant may not automatically translate into the presumption that a defendant may challenge the plea, the language from Sidell, which is in accord with what we adopted in Latiif, expressly supports this proposition:
Because Sidell did not ask to withdraw his plea, we affirm the denial of his motion to correct sentence. This affirmance is without prejudice to Sidell's right to file an appropriate motion under rule 3.850 to withdraw his plea. If he does, in accordance with Jolly, the trial court shall give the State the option of accepting a sentence that does not constitute a departure under the 1994 guidelines or requiring the withdrawal of the plea. If the plea agreement is abrogated, Sidell may face the original charges. See Geiger v. State, 532 So.2d 1298 (Fla. 2d DCA 1988). Sidell has two years from the date of the Heggs decision to raise this claim. See Murphy v. State, 773 So.2d 1174 (Fla. 2d DCA 2000) (en banc).
*1199 Sidell, 787 So.2d at 141.[4] Therefore, as in Sidell and Jones, I conclude that Banks would be entitled to challenge the voluntary and intelligent nature of his plea based on his alleged reliance on the validity and severity of the 1995 guidelines. Of course, the burden remains on him to prove his claim to the satisfaction of the trial court. I conclude only that he has stated a prima facie claim for relief under rule 3.850.
In effect, our determination in Heggs that chapter 95-184 was facially unconstitutional meant that the 1995 guidelines were a nullity, and for the purpose of determining Banks' sentence, the law that existed at the time he committed his crime dictated that only the 1994 guidelines could be lawfully used, to the extent that any set of guidelines were used in negotiating his plea agreement. In this regard, the correct state of the law in place when Banks was negotiating his plea agreement precluded the use of the 1995 guidelines passed in chapter 95-184.

TIMELINESS OF POSTCONVICTION MOTION
Relying on Regan, the court below also determined that Banks' motion was untimely. In Regan, however, the First District found that our Heggs decision did not create a "change in the law" that could be applied retroactively such that a postconviction motion filed beyond the two-year limitation of rule 3.850 should be considered timely. Regan, 787 So.2d at 266 (Fla. 1st DCA 2001).
Of course, as the discussion above makes clear, we expressly recognized in Heggs that the decision should be applied retroactively by our explicit recognition that those individuals adversely impacted by reliance on the validity of the 1995 guidelines may be entitled to some relief, even those individuals whose judgments and sentences were final. As we specifically stated in Heggs,"We realize that our decision here will require, among other things, the resentencing of a number of persons who were sentenced under the 1995 guidelines, as amended by chapter 95-184." Heggs, 759 So.2d at 627. In Trapp v. State, 760 So.2d 924 (Fla.2000), this Court discussed who would have standing to bring a challenge based on Heggs, and defined the window period for those individuals who were entitled to request relief predicated on Heggs. See Trapp v. State, 760 So.2d 924, 928 (Fla.2000) (holding that the window for relief under Heggs was limited to those who committed their offenses between October 1, 1995, and May 24, 1997). As explained in Trapp, the window period for challenging the sentencing guidelines provisions amended in 1995, which violated single-subject rule of Florida Constitution, opened on October 1, 1995, when the amended guidelines provisions became effective, and closed on May 24, 1997, when the amendments were reenacted as part of the biennial adoption process. See Trapp, 760 So.2d at 928. Clearly, the two-year time limit for filing a post-conviction motion challenging a plea where an individual relied on the mistaken belief that the 1995 guidelines were valid would not have started running until our decision in Heggs. It *1200 is undisputed that Banks sought relief within that time period.
Accordingly, since Banks has timely filed a claim that his plea relied on the validity of the guidelines we subsequently held to be unconstitutional, I would direct that he be given an opportunity to prove his claim.
PARIENTE, C.J., concurs.
NOTES
[1] The questions, as certified by the First District, read as follows:

WHETHER THE CHANGE OF LAW CREATED BY THE HEGGS DECISION SHOULD BE DEEMED A "NEWLY DISCOVERED FACT" AS CONTEMPLATED BY RULE 3.850(B)(1), WHEREBY AN APPELLANT MAY RAISE A HEGGS BASED CLAIM FOR POSTCONVICTION RELIEF MORE THAN TWO YEARS AFTER THE APPELLANT'S JUDGMENT AND CONVICTION BECAME FINAL?
WHETHER THE CHANGE OF LAW CREATED BY THE HEGGS DECISION SHOULD BE DEEMED TO APPLY RETROACTIVELY, SUCH THAT AN APPELLANT MAY RAISE A HEGGS BASED CLAIM FOR POSTCONVICTION RELIEF MORE THAN TWO YEARS AFTER THE APPELLANT'S JUDGMENT AND CONVICTION BECOME FINAL?
Banks, 801 So.2d at 154. Because we conclude that Banks is not entitled to relief we decline to answer these questions.
[2] These ranges come from the calculations and sentencing points on the sentencing scoresheets attached to Banks' motion, which indicate that they were prepared by the State Attorney's Office. As these calculations and sentencing points and the accompanying sentencing ranges derived therefrom were not disputed, we accept them as correct.
[3] The transcripts attached to the trial court's order reflected that the following conversation took place at Banks' plea agreement proceedings:

[DEFENSE COUNSEL]: As to Mr. Banks, Case 96-544, at this time we would tender to the Court a plea of nolo contendere. That information in that case charges one count of sexual battery and one count of burglary of a dwelling with a battery or assault. In addition, Your Honor, in Cases 96-545 and 96-588, we would tender to the Court a plea of nolo contendere with the understanding and as part of the agreement with the state that the charges in those cases would be merged with Case 96-544. The understanding further being, Your Honor, that the Court will adjudicate Mr. Banks and impose a sentence of eleven years in the department of corrections.
COURT: Now does that include the amendment of the information in the case?
[STATE]: Based on the agreement with the cases being merged, Your Honor, the score would come out just below eleven years.
COURT: Then we'll need an amended guideline scoresheet in the case.
[STATE]: Yes, sir, I'll provide that to the Court.
[4] We initially accepted jurisdiction in Booker to address this issue, but subsequent to our acceptance, Booker filed a notice to voluntarily dismiss his petition for review and we dismissed review.
[1] As noted above, during the plea colloquy and sentencing hearing in Banks' case, the judge referred to the preparation of an amended guideline sentencing scoresheet. Moreover, his plea agreement contained the statement that he understood his plea would be imposed under the uniform sentencing guidelines.
[2] Banks also argues that the instant case is analogous to cases where courts have held that a plea entered based on an incorrectly calculated guideline sentence could be the basis for a valid rule 3.850 challenge to the voluntary and intelligent nature of the plea. See Smith v. State, 741 So.2d 579 (Fla. 3d DCA 1999); Skidmore v. State, 688 So.2d 1014 (Fla. 3d DCA 1997); Hingson v. State, 553 So.2d 768 (Fla. 1st DCA 1989); Gainer v. State, 590 So.2d 1001 (Fla. 1st DCA 1991). In Hingson, the defendant pled to a term of years based upon an improperly scored sentencing guidelines scoresheet. Hingson, 553 So.2d at 769. The First District Court of Appeal held that where a plea is based on an incorrect guidelines score, the plea may be considered involuntary and defendant should be permitted to withdraw his plea. Id. On similar facts, the First District in Gainer stated that if appellant "agreed to a 7 year sentence only because he believed that his guidelines score resulted in a recommended range encompassing that sentence, that plea may be considered involuntary." Gainer, 590 So.2d at 1002. The Third District Court of Appeal has similarly held that where a defendant claims he would not have entered a plea if he had known what his correct sentencing guideline scoresheet was, then that is an attack on the voluntary and intelligent nature of the plea. Skidmore, 688 So.2d at 1015; Smith, 741 So.2d at 580. Although these cases are distinguishable because they each involved situations where guidelines were miscalculated rather than the situation in the instant case where the guidelines in question were part of a statute that had been declared unconstitutional, they do provide support for Banks' argument that he should be allowed to withdraw his plea.
[3] As we noted in Heggs,"The one subject rule is not concerned with substantive legislative power. It is aimed at log-rolling." 759 So.2d at 630 (quoting Millard H. Ruud, No Law Shall Embrace More Than One Subject, 42 Minn. L.Rev. 389, 399 (1958)). In this case, the law is unconstitutional because of the single subject violation, which triggers the assumption that several minorities were combined into a majority in order to subvert procedural legislative process. "The one-subject rule declares that this perversion of majority rule will not be tolerated." Heggs, 759 So.2d at 630 (quoting Ruud, 42 Minn. L.Rev. at 399). Thus, the single subject rule is a constitutional procedure that is imposed upon the legislative process.

In B.H. v. State, 645 So.2d 987 (Fla.1994), this Court noted that a statute which had failed to meet the constitutional procedures imposed upon the legislative process was "illegally enacted and thus was void ab initio, as opposed to being merely voidable. All parts of an act void because of defective enactment never have any actual effect." Id. at 995 (emphasis supplied). Consistent with B.H., we concluded in Heggs that "a chapter law that violates the single subject rule ... must be voided in its entirety." Heggs, 759 So.2d at 629.
[4] Although Sidell involved a situation where the defendant's sentence constituted a departure from the 1994 guidelines, both the Second and Fourth Districts have applied this same rationale allowing individuals to file an appropriate motion under rule 3.850 to withdraw a plea even where the individuals' sentences technically fell within the range of the 1994 guidelines. See, e.g., Cox v. State, 805 So.2d 1042 (Fla. 4th DCA 2002); Gonzalez v. State, 826 So.2d 410, 411 (Fla. 2d DCA 2002); Carvello v. State, 824 So.2d 202 (Fla. 4th DCA 2002); Honeycutt v. State, 805 So.2d 987 (Fla. 4th DCA 2001); Jones v. State, 781 So.2d 447 (Fla. 4th DCA 2001); Murphy v. State, 773 So.2d 1174 (Fla. 2d DCA 2000) (en banc).